## PAGE v. ROGERS, TRUSTEE IN BANKRUPTCY.

APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 39.   Argued December 3, 4, 1908.—Decided January 4, 1909.

Where two courts have concurred in findings of fact in a suit in equity, this court will accept those findings unless clear error is shown. *Dun v. Lumbermen's Credit Association*, 209 U. S. 20.

A partner cannot be considered as solvent individually as distinct from his firm which is insolvent, when he is practically the only partner, and his associate, although nominally a partner, is in fact only an employé; and a preferential payment made from his individual estate may, under such circumstances, be recovered for the benefit of all his creditors.

A deed unrecorded and placed in escrow more than four months before bankruptcy and delivered within that period *held*, under the circumstances of this case, to be a preferential payment within the meaning of the bankruptcy law.

The amount of fees to which counsel for the trustee in bankruptcy is entitled is a matter for the bankruptcy court and in this case this court will not interfere with the amount fixed.

149 Fed. Rep. 194, affirmed on these points.

One compelled to surrender a preferential payment is entitled to prove his claim and receive dividends equally with other creditors, *Keppel* v. *Tiffin Savings Bank*, 197 U. S. 356, and where the suit is in the bankruptcy court and it is practicable, as in this case, to ascertain the amount of the dividend to which he will be entitled, it can be fixed and deducted from the amount which he is compelled to surrender.

149 Fed. Rep. 194, reversed solely for this purpose.

THE facts are stated in the opinion.

*Mr. Frank Spurlock*, with whom *Mr. E. J. Page*, *Mr. Louis L. Waters* and *Mr. Foster V. Brown* were on the brief, for appellants.

*Mr. J. B. Sizer*, with whom *Mr. George D. Lancaster* and *Mr. Robert Pritchard* were on the brief, for appellee.

Mr. Justice Moody delivered the opinion of the court.

This is an appeal in equity from a decree of the Circuit Court of Appeals for the Sixth Circuit. The suit was begun by the appellee, the trustee of the estate of I. B. Merriam, a bankrupt, against Thomas Merriam, to recover a preference alleged to have been received by the latter in violation of the bankrupt law. During the pendency of the suit the defendant died, and the executors of his will were admitted to defend. The plaintiff had a decree, which was affirmed by the Circuit Court of Appeals. There were findings of fact by the District Court, concurred in by the Circuit Court of Appeals. These findings, together with the undisputed facts, may be condensed and stated in narrative form.

I. B. Merriam had been engaged in business for some years as a wholesale grocer at Chattanooga, Tenn. On the first day of June, 1903, he was considerably indebted and insolvent, and the defendant knew it. Much the larger portion of his indebtedness was to his brother, the defendant, Thomas Merriam, or to persons holding claims which Thomas Merriam had guaranteed by indorsement or otherwise. I. B. Merriam then had no assets of much value, with the exception of an undivided half interest in certain coal lands situated in Tennessee. On that day he conveyed his interest in the coal lands to Thomas Merriam, who agreed to pay therefor $65,000 in money and stock of the par value of $20,000 in the Tennessee Lumber & Coal Company, a corporation, to which Thomas Merriam immediately sold and conveyed the land. The purchase money, after the deduction of $7,400, used for the purpose of extinguishing encumbrances on the land, in pursuance of an agreement made at the time, was mainly devoted to the payment of the debt then due directly from I. B. Merriam to Thomas Merriam, and to the payment of other debts of I. B. Merriam for which Thomas Merriam was liable. At the same time, and as part of the same transaction, Thomas Merriam caused to be advanced to I. B. Merriam $10,000 additional upon the pledge of his stock in the Tennessee Lum-

ber & Coal Company. The net result of the transaction was that I. B. Merriam received, as the consideration for the conveyance of his interest in the coal lands, $75,000 in cash and an equity of redemption of the pledged shares in the corporation. Of this $75,000, $61,000, by agreement, was applied either to the payment of the debt due to Thomas Merriam, or, on his demand, to the payment of debts for which he was liable. At the time of the conveyance and the making of the agreement stated Thomas Merriam had reasonable cause to believe that thereby his brother intended to give him a preference. The purpose and effect of the transfer was to give Thomas Merriam a greater percentage of his debt than could be obtained by other creditors of the same class. Indeed, the purpose and effect of the transfer was to pay Thomas Merriam in full and to exonerate him from all liability as guarantor, and its effect was to leave all other creditors with substantially nothing to meet their claims. Within a very few days after this transaction was completed I. B. Merriam filed a voluntary petition in bankruptcy, and was subsequently adjudicated a bankrupt.

Upon the foregoing statement of facts it is indisputable that Thomas Merriam received a preference to the extent of $61,000, forbidden by the bankrupt law, and that it could be avoided and recovered by the trustee. We do not understand counsel for the defendant as disagreeing with this conclusion. Conceding it, however, counsel urged with great earnestness that the findings of fact in the two courts below were erroneous, and we were invited to consider the evidence again in that view. But the rule is well established that where two courts have concurred in findings of facts in a suit in equity, this court will accept those findings, unless clear error is shown. *Dun* v. *Lumbermen's Credit Association,* 209 U. S. 20.

We are unable to discover any such error. On the contrary, every fact essential to constitute a preference was substantiated by the evidence. That being so we decline to subject to minute scrutiny the language of the court employed in discussing questions of fact. There is no reason for a review of

the evidence in detail. The Circuit Court of Appeals has re-viewed it satisfactorily in a convincing opinion, and we do not feel called upon to repeat the discussion.

There, however, should be a brief reference to two conten-tions of the defendant, that the findings were influenced by erroneous views of the law. It is first said that there was error in law in confounding the individual debts of I. B. Merriam with the partnership debts of I. B. Merriam & Son, with the result that I. B. Merriam was found to be insolvent as an in-dividual, while really he was solvent, as his individual assets exceeded his individual indebtedness. But there was no real partnership. I. B. Merriam & Son was simply the name under which I. B. Merriam conducted the wholesale grocery business. The son was only an employé, receiving a salary, and had no interest whatever in the business. All the assets were owned and all the debts were owed by I. B. Merriam alone.

It is further said that I. B. Merriam agreed in writing, on November 15, 1902, to convey the coal lands to Thomas Mer-riam in satisfaction of the debts due to him or for which he was liable. It is, therefore, argued that as the conveyance, on June 1, 1903, was in performance of this agreement, which ante-dated the bankruptcy proceedings by more than four months, it cannot be regarded as a preference.

The facts, however, do not raise the question which was argued. Upon a proper interpretation of the evidence we need not determine whether an insolvent debtor may make an agreement to convey a substantial portion of his assets to a favored creditor, keep that agreement secret for more than four months, and then execute it in fraud of the rights of his other creditors, in favor of a creditor who then has reasonable cause to believe that he is receiving a preference. *In re Broad-way Savings Trust Co.*, 152 Fed. Rep. 152, and see *Wilson* v. *Nelson*, 183 U. S. 191.

What actually occurred was that a contract in writing was made in November, 1902, between I. B. Merriam and his co-owner, parties of the first part, and Thomas Merriam and an-

other, parties of the second part, whereby the parties of the first part agreed to sell and the parties of the second part agreed to buy the coal lands for a named price. Nothing whatever in this contract required that I. B. Merriam's share of the consideration should be paid to Thomas Merriam or on debts for which he was liable. Moreover, the contract and a deed which was drawn in pursuance of its terms were not delivered, but were deposited in escrow with a bank in Syracuse, N. Y., and never became operative instruments. Nothing more need be said of them, or of the question supposed to be raised.

When Thomas Merriam came to file his answer in the suit, he alleged, in substance, that several years before the conveyance, which has been referred to, and the adjudication in bankruptcy, which followed, I. B. Merriam had executed and delivered, for an expressed consideration of $35,000, a trust deed of the coal lands, which was intended to be a security to Thomas Merriam for loans which he had made or might make to his brother, up to that amount. This trust deed, as subsequently appeared by the evidence, was executed but not registered. A registration of the deed was not required by the law of the State of Tennessee to make it a valid instrument *inter partes*. The defendant therefore contended that so far as the payments from the purchase money of the coal lands were applied to the indebtedness secured by the trust deed they were payments for the extinguishment of a valid, subsisting lien upon the land, fixed upon it more than four months before bankruptcy, and therefore not a preference. It may be assumed, without decision, that the payment within four months of bankruptcy of a mortgage older than four months, and valid *inter partes*, though unrecorded, cannot be a preference. There is no such case here. The trust deed was not delivered unconditionally and the parties to it intended that it should go into effect as a lien only when it was registered, which was never done. The instrument, though actually written, was never delivered as a present, valid and subsisting obligation. It was executed and held in the possession of

the grantor to be delivered and to become operative as a conveyance at some future time, which never arrived. It was written and held ready for instant use, but never actually used until brought forward to excuse a payment which otherwise would be an unlawful preference. In other words, the paper was not as much as an unrecorded deed; it was not a deed at all. Such in effect was the finding of both courts below and we think it was warranted by the evidence. As has been said, the first reference to this paper was made by the defendant's answer, wherein it was alleged that the paper was a deed executed and delivered. The plaintiff's general replication put in issue at least the existence of the deed and no amendment to the bill was needed.

The alternative ruling that the trust deed was invalid for want of good faith, and because it was agreed to be withheld from record to mislead and defraud creditors, may be disregarded. Therefore we need not consider whether the bill should have been amended to permit an attack on the deed as fraudulent.

What has been said disposes of every question made in the case, except one, which may be considered more advantageously after the form of the decree is noticed. There were two decrees in the cause. Their effect, taken together, as we understand them, is to order the defendant to pay into the court of bankruptcy the $61,000 received as a preference on June 1, 1903, with interest to the date of the rendition of the final decree, making the total amount to be paid $70,891.54. The theory upon which the decree proceeded was, that no greater sum should be required of the defendant than would be needed to meet the amount of the claims proved or provable against the bankrupt and the cost and expenses of the administration of the bankrupt estate, including fees of counsel for the trustee. As this amount exceeded that received by the defendant by way of preference, the decree exacted of him all that he had received. In computing the amount required to meet the expenses of administration a fee of $15,000, of counsel for the

trustee for their services to him in all matters, including this litigation, was included. The defendant complains that this fee is exorbitant. It certainly appears to be large. It seems, however, that the proper place to raise this question would be in the bankruptcy court. In any event, we would be unwilling to reverse the judgment of the lower courts upon this question, in view of the fact that they have a much more intimate acquaintance with the services than we can possibly have.

All that has been said would naturally lead to an affirmance of the decree. Nevertheless, we are of the opinion that it ought to be modified, for a reason not dwelt upon in argument. Now that this litigation has come to an end, and the defendant has been compelled to surrender the preference which he received, he is entitled to prove his claim and to receive a dividend on it upon an equality with other creditors. *Keppel* v. *Tiffin Savings Bank,* 197 U. S. 356. In view of the fact that this suit was brought in the bankruptcy court itself, and a final decree is to be entered by the judge of that court, it is entirely practicable to avoid the circuitous proceeding of compelling the defendant to pay into the bankruptcy court the full amount of the preference which he has received, and then to resort to the same court to obtain part of it back by way of dividend. The defendant may be permitted, if he shall be so advised, to prove his claim against the estate of the bankrupt, and the bankrupt court then may settle the amount of the dividend coming to him, and the final decree may direct him to pay over the full amount of his preference, with interest, less the amount of his dividend. Solely for the purpose of accomplishing this result, the final decree in the case is reversed and the case remanded to the District Court to take proceedings in conformity with this opinion.

*Decree reversed.*