In re WRIGHT-DANA HARDWARE CO.

(Circuit Court of Appeals, Second Circuit. February 17, 1914.)

No. 166.

1. BANKRUPTCY (§ 326*)—PREFERENCES—SET-OFF BY BANK.

Under Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) § 68, providing that, in cases of mutual debts or credits between the estate of a bankrupt and a creditor, one debt shall set off against the other and the balance allowed or paid, section 60, subd. "a," as amended by Act Feb. 5, 1903, c. 487, § 13 (U. S. Comp. St. Supp. 1911, p. 1506), relative to preferences, and subdivision "b," as amended by Act June 25, 1910, c. 412, § 11 (U. S. Comp. St. Supp. 1911, p. 1506), which provides that a transfer, within four months before the filing of the petition, is voidable if the bankrupt be insolvent, the transfer operate as a preference, and the person receiving it had reasonable cause to believe that its enforcement would effect a preference, a bank within four months before the filing of the petition may apply a deposit by the bankrupt on a debt due it, though it knows of the bankrupt's insolvency, where it has no reasonable cause to believe that a preference will be effected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*]

2. BANKRUPTCY (§ 326*)—PREFERENCES—SET-OFF BY BANK.

The right of a bank to apply a deposit on a debt due it within four months before the filing of a petition in bankruptcy cannot be denied upon a mere suspicion or bare inference that it had reasonable cause to believe that a preference would be effected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*]

3. BANKRUPTCY (§ 311*)—PREFERENCES—AVOIDANCE—FILING NEW CLAIM.

Where the court in a bankruptcy proceeding found that the application of a deposit by the bankrupt on a debt due a bank constituted a preference, its decree properly authorized the bank, upon payment of the deposit, to file a new or amended claim for the sums found to be preferences.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. BANKRUPTCY (§ 311*)—PREFERENCES—AVOIDANCE—OFFSETTING DIVIDEND.
In a bankruptcy proceeding where a creditor has received a preference less than the amount of its claim, the court, instead of requiring the repayment thereof, may properly permit proof of the creditor's claim, and provide by its final decree for the deduction of the amount of the preference, with interest from the dividend due such creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

Appeal from the District Court of the United States for the Northern District of New York.

In the matter of the Wright-Dana Hardware Company, bankrupt. From an order (207 Fed. 636), respecting the claims of the Utica City National Bank and another, such claimants and John A. Cantwell, trustee, bring cross-appeals. Reversed and remanded.

See, also, 205 Fed. 335.

The Utica City National Bank, George S. Dana, and Robert L. Kinne, on January 17, 1912, filed a petition for adjudication of bankruptcy against the Wright-Dana Hardware Company. The said company was duly adjudicated a bankrupt on February 5, 1912. The Wright-Dana Company for a number of years prior to this adjudication of bankruptcy had kept an account and received accommodation by way of loans at the Utica City National Bank. Four months before the petition in bankruptcy was filed, or about the middle of September, 1911, the bank owned and held promissory notes, made and given ·by the company, of the face value of more than $14,000, and was likewise the owner and holder of several promissory notes on which the company was liable as indorser. Payments were made to the bank by the Wright-Dana Company on account of the principal and interest of these notes at the following times and in the following amounts:

|  | 1911 |  |  |  |
|---|---|---|---|---|
| Dec. | 18 | Interest | $ 30 | 11 |
| " | 20 | Principal | 723 | 55 |
| " | 26 | Principal | 376 | 45 |
| " | 26 | Interest |  | 76 |
| Oct. | 7 | Principal and interest | 100 | 42 |
|  | 1912 |  |  |  |
| Jan. | 4 | Interest | 48 | 77 |
| " | 8 | Principal | 200 | 00 |
| " | 8 | Interest | 1 | 27 |
|  |  | Total | $1,481 | 33 |

On January 10, 1912, the balance on the books of the bank to the credit of Wright-Dana Company was $52.69. Thereafter the following deposits were made by the company:

| Jan. | 11 | $109 | 55 |
|---|---|---|---|
| " | 13 | 300 | 73 |
| " | 15 | 166 | 07 |
| " | 16 | 100 | 00 |
| " | 18 | 271 | 42 |
| " | 19 | 123 | 14 |
| " | 22 | 174 | 81 |
| " | 24 | 78 | 94 |
| " | 27 | 220 | 29 |
| " | " | 95 | 75 |
| " | 30 | 121 | 36 |
| Feb. | 2 | 132 | 33 |

Only one check was drawn by the company after January 10th against its balance on deposit in the bank, and that was one in the sum of $14.35. On January 16, 1912, the bank applied $639.04 of the deposit then standing to

the credit of the company to the partial payment and satisfaction of a note owned by the bank and made by the company, and on January 26, 1912, the bank applied and credited $75 of the deposit standing to the company's credit to the payment of another note owned by the bank, and upon which the company was liable. There was a balance in the bank to the credit of the company, at the time it was adjudicated a bankrupt on February 5, 1912, of the sum of $2,032.73, disregarding the deductions of $629.04 and $75.00.

The court below allowed the set-offs made by the bank prior to January, 1912, and disallowed those made during January and subsequent thereto. The order of the court provided that the claims of the bank and of Robert L. Kinne against the company should not be allowed unless the bank should, within 10 days from the date of the order, pay over to the trustee in bankruptcy the sums appropriated by the bank after it had reasonable cause to believe its appropriation would effect a preference in its favor, viz., in and after January, 1912, together with the balance of the account applied and retained at the time the petition was filed, the whole aggregating $2,-282.77. The order goes on to provide as follows:

"Further ordered and decreed, that if said Utica National Bank shall pay over said sum of $2,282.77 unto said John A. Cantwell, as trustee, within the said time, then and in that event within five days after said payment the said Utica City National Bank shall be entitled to file a new claim or an amended claim against the estate of the said bankrupt for the following amounts, received and credited by the said bank at the following times to said bankrupt, and herein decreed to be preferences: $48.77 January 4, 1912; $200 January 8, 1912; $1.27 January 8, 1912; $629.04 January 16, 1912—and the claim filed by said bank on the 27th day of February, 1912, shall be allowed at the sum of $7,047.25, without any offset therefrom, and the claim filed by the said Robert L. Kinne on the 27th day of February, 1912, shall be allowed at the sum of $5,356, and the claim filed by the said bank on the 30th day of July, 1912, shall be allowed at the sum of $222.49."

Cross-appeals from a final decree of the United States District Court for the Northern District of New York.

Lynch & Willis, of Utica, N. Y. (Charles I. Taylor, of New York City, of counsel), for appellants and cross-appellees.

Martin & Jones, of Utica, N. Y. (Richard R. Martin, of Utica, N. Y., of counsel), for Cantwell as trustee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question involved in this case is as to the effect of the bankruptcy of a depositor in a bank upon the bank's right to set off sums due from it to the bankrupt against sums due from the bankrupt to it.

The bankruptcy act in section 68 contains the following provisions on the subject of set-offs and counterclaims:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

In section 60 the act contains the provision relating to preferences. It provides in part as follows:

"a. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after

the filing of the petition and before the adjudication, * * * made a transfer of any of his property, and the effect of the * * * transfer will be to enable ony one of his creditors to obtain a greater percentage of his debt than any other such creditors of the same class."

And in subdivision "b" of the same section it is provided:

"If a bankrupt shall have * * * made a transfer of any of his property, * * * being within four months before the filing of the petition in bankruptcy, or after the filing thereof and before the adjudication, the bankrupt be insolvent and the * * * transfer then operate as a' preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

And in section 57, subdivision "g," as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 (U. S. Comp. St. Supp. 1911, p. 1504), it is provided as follows:

"The claims of creditors who have received preferences, voidable under section sixty, subdivision "b," or to whom * * * transfers * * * void or voidable' under section sixty-seven, subdivision "e," have been made or given, shall not be allowed unless such creditors shall surrender such preferences. * * *"

In considering the facts in the present case it is necessary to keep in mind the foregoing provisions of the bankruptcy act. It is also necessary to remember that the petition in bankruptcy was filed on January 17, 1912, and that the adjudication followed on February 5, 1912.

The evidence shows that between October 7 and December 26, 1911, the bank charged off various sums for principal and interest, aggregating the sum of $1,231.29. During the whole of that period the relation of debtor and creditor existed between the bank and the company, and at the various times when the bank charged off the several set-offs, the company was indebted to the bank on promissory notes. The several transactions were done in the due, regular, and usual course of business, and at a time when the company's business was being conducted in the usual manner; there being no evidence to show that the company contemplated bankruptcy prior to January 1, 1912.

The claim of the trustee is that the items aggregating $1,231.29, which the bank charged off prior to January 1, 1912, were preferential payments or transfers to the Utica City National Bank, not because that sum of money had been deposited in the bank by the Wright-Dana Company, but becasue they were payments or transfers made within four months of the filing of the petition in bankruptcy, at times when the Wright-Dana Company was insolvent and when the Utica City National Bank had reasonable cause to believe that the enforcement of the transfer would effect a preference in its favor.

The right of a bank to a set-off as against a bankrupt depositor was passed upon by the Supreme Court of the United States in New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, a case which went up from this circuit, and which was decided in 1903. The bank in that case, as in this, had exercised a right of set-off, and it was claimed that the transaction amounted

to giving a preference to the bank by enabling it to receive a greater percentage of its debts than other creditors of the same class. But the Supreme Court upheld the bank's right to the set-off. The court in reaching its conclusion said that a deposit of money to one's credit in a bank did not operate to diminish the depositor's estate, for when he parted with the money he created at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor might see fit to draw a check against it. It did not amount to a transfer of property as a payment, pledge, mortgage, gift, or security. It continued:

"It is true that it creates a debt, which, if the creditor may set it off under section 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of section 68a. If this argument were to prevail, it would, in cases of insolvency, defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of the debt due the bankrupt receives a preference in the fact that to the extent of the set-off he is paid in full."

The question came before the Supreme Court again in Studley v. Boylston National Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313, decided in 1913, where it was held that nothing in the bankruptcy act deprives a bank with which the insolvent is doing business of the rights of any other creditor taking money without reasonable cause to believe that a preference will result; and, it being found that the deposits and payments of notes were not made to enable the bank to secure a preference by the right of set-off, the bank had a right to set off the deposits against the notes within four months of the bankruptcy.

[1] But conceding the law to be as above stated, it is insisted that the facts of the case at bar are such as to deprive the Utica City National Bank of the right of set-off which, under other circumstances, it might exercise. Our attention is called to the fact that the referee found that the Wright-Dana Company was insolvent on September 15, 1911 (four months before bankruptcy), and continued to be insolvent to the date of its adjudication in bankruptcy on February 5, 1912, and that during the whole of that time the fact of its insolvency was known to the bank. All this may be true and yet not deprive the bank of its right to set-off. A bank may do business in the usual manner with one it knows to be insolvent. The mere fact of insolvency, or mere knowledge of the insolvency of the depositor, is not alone sufficient to take away the bank's right of set-off. As said in Studley v. Boylston National Bank, supra:

"There is nothing in the statute which deprives a bank, with whom an insolvent is doing business, of the rights of any other creditor taking money without reasonable cause to believe that a preference will result from the payment. The bankruptcy act contemplates that by remaining in business and at work an insolvent may become able to pay off his debts. It does not prevent him from continuing to trade, depositing money in bank, drawing checks, and paying debts as they mature, either to his own bank or any other creditor. It does provide, however, that if bankruptcy ensues, all payments

thus made, within the four-months period, may be recovered by the trustee, if the creditor had reasonable cause to believe that a preference would be thereby effected."

[2] It seems, however, that the referee found that the bank had cause to believe that the payments now under consideration would effect a preference in its favor. It is undoubtedly the case that if the bank had reasonable cause to believe that these set-offs would effect a preference in its favor, they would be voidable by the trustee under section 60, subdivision "b," of the bankruptcy act. The difficulty is that the court below took a different view of the evidence from that taken by the referee, and that the view this court takes of it accords with that taken by the court below, and not with that taken by the referee. Counsel for the trustee asks us to believe that the court below overlooked this finding of fact by the referee, inasmuch as the finding was not formally vacated or changed by the District Court. We do not agree with him. The court below in express terms set up that finding, and in effect modified it by allowing the bank to set off the items prior to January 1, 1912, but not any made after that time. And the court declared in its opinion that there was no evidence, unless by inference, that bankruptcy was contemplated, or that any preference was intended by the company, prior to January 1, 1912. We think that as to the set-offs thus allowed, the court below was right in sustaining them, as it was not made to satisfactorily appear that the bank had reasonable cause to believe, at the time they were made, that a preference would be thereby effected. The right of the bank to make the set-offs made prior to January 1, 1912, cannot be denied upon a mere suspicion or a bare inference. If courts were to proceed so to administer the law, banks could not safely do business with insolvents. The intention of the act that insolvency should not deprive one of his right to remain in business would be destroyed in large part, and bankruptcy in many cases would be precipitated, if the courts should, upon slight inferences, deny the right of set-off.

As to the set-offs made by the bank after January 1st, and after the bank had reasonable grounds for believing that the set-offs thereafter made might effect a preference, they were properly disallowed by the court below. Indeed the bank did not insist upon this appeal that any error had been made by the court below as respects the set-offs made after January 1, 1912. The transfers made after that date must be regarded as preferences. The total amount of preferences the bank had improperly received amounted to $2,282.77.

[3] The court below in its order decreed that if the bank should pay over to the trustee this sum of $2,282.77 within the time allowed, then it should be entitled, within five days after such payment, to file a new claim or an amended claim against the estate of the bankrupt for certain sums which had been found by the court to be preferences. This provision of the decree the trustee claims is error, and asks us to direct that it be stricken out of the decree. This we cannot do. In Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332 (1909) the Supreme Court said:

"Now that this litigation has come to an end, and the defendant has been compelled to surrender the preference which he received, he is entitled to

prove his claim and to receive a dividend on it upon an equality with other creditors. Keppel v. Tiffin Savings Bank, 197 U. S. 356 [25 Sup. Ct. 443, 49 L. Ed. 790]."

[4] It seems to us, however, that the decree may be modified, although upon a point not mentioned in argument. Instead of requiring the defendant to pay into the bankruptcy court the full amount of the preference it has received, and then resort to the same court to obtain it back by way of dividend, it would seem the better plan, and a less circuitous proceeding, to permit the defendant to prove its claim against the estate of the bankrupt and the bankrupt court to settle the amount of the dividend coming to it. And then the final decree should direct the trustee to pay over the amount of its dividend to the bank, less the amount of the preferences which the bank has received, together with the interest on such preferences. This would be in accord with what the Supreme Court directed in the analogous case of Page v. Rogers, supra. In that case the creditor had received in preferences a sum in excess of the amount of his claim, and the Supreme Court thought he should not be required to pay over the full amount of the preference, but that the bankrupt court should settle the amount of the dividend coming to him and the final decree direct him to pay over the full amount of his preferences, with interest, less the amount of his dividend. In the case at bar the amount of the preferences which the bank has received is less than the amount of its claim. But we do not see that this difference makes the principle applied in the former case any less applicable to this.

In all other respects than that just mentioned we affirm the decree, and we reverse the case and remand it to the District Court for no other purpose than to enable that court to modify its decree in the particular above mentioned.

Decree reversed.