# GOLDEN & COMPANY *v.* LOVING.

# LOVING *v.* GOLDEN & COMPANY.

BANKRUPTCY; PREFERENCE; AVOIDANCE; PARTICIPATION IN ASSETS; EQUITY.

1. A conveyance of real estate within four months before bankruptcy, made by the bankrupt to a stockholder of a creditor company, who held the same for the company, and paid for it with money which was furnished by the company and received back by it from the bankrupt, is a voidable preference.

2. The purchase price of land conveyed by a bankrupt to a stockholder of a creditor company which furnished the money and received it back from the bankrupt cannot be recovered by the trustee in bankruptcy as a preference, when the conveyance itself is set aside as a preference.

3. An application of a preferred creditor to have the avoidance of the preference conditioned upon his admission to participate as a general creditor in the distribution of the assets to the full amount of the debt due at the date of performance,—held to have been properly denied by the court below, where the court did not deny the right of the preferred creditor to prove his claim for the surrender of the preference.

Nos. 2675 and 2676.  Submitted October 13, 1914.  Decided December 7, 1914.

HEARING on two appeals from a decree of the Supreme Court of the District of Columbia vacating the transfer of certain real estate made by an insolvent debtor within four months of the filing by him of a petition in bankruptcy.         *Affirmed.*

The COURT in the opinion stated the facts as follows:

There are two appeals in this case from the same decree, which vacates the transfer of certain real estate made by an insolvent debtor, Clarendon Smith, within four months of the

filing of his petition in bankruptcy. The bill was filed by Lucas P. Loving, who had been appointed trustee of the bankrupt's estate. It alleged that on June 8, 1908, the said Smith was indebted to Golden & Company in the sum of $7,567.80, and on said date conveyed the house and lot, No. 912 "S" St. N. W., to Ernest H. Daniel for the sum of $8,000, subject to a registered mortgage of $3,000. That Daniel acted as agent for Golden & Company in the transaction, who furnished the money for the purchase and held the property for them. That said Smith immediately turned over to Golden & Company the sum of $7,567.80, received from Daniel in payment of an outstanding debt due by him to them. That at the time of the said conveyance and payment, the said Smith was insolvent, which Golden & Company well knew. . That the transaction was a scheme to secure a preference to Golden & Company over other creditors.

The prayers for relief are that the conveyance to Daniel be declared void, and that he be required to reconvey the property to the plaintiff.

2d. In case of the refusal of the relief first prayed, Golden & Company be ordered to pay to the plaintiff the sum of $7,567.80 paid them by the said Smith, with interest from June 8, 1908.

The allegations of the bill were denied by Golden & Company and Daniel, and the case came on for hearing in the equity court on the evidence then taken. A decree was entered February 27, 1914, declaring void the conveyance to Daniel, and ordering him to reconvey the property to plaintiff by duly executed deed. The application of Golden & Company that, as a condition of the vacation of the conveyance, they be allowed to participate as general creditors to the full amount of their unpaid claim in the distribution of the assets, was denied.

The prayer of the plaintiff for the recovery of the amount paid by Smith to Golden & Company was denied.

Golden & Company appealed from the decree, and plaintiff, Loving, from so much of it as denied his prayer for the recovery of the amount received by the defendant as a preference of their debt through the sale of the property.

The undisputed facts are that Clarendon Smith was in fact insolvent, at the time of the conveyance, June 8, 1908; for at that date, which was within four months of the filing of his petition in bankruptcy, the aggregate of his property at a fair valuation was insufficient to pay his debts, which is the present statutory definition of insolvency.

He was engaged in two kinds of business. The first in which his chief indebtedness had accrued was the sale of butter. He had no central place of business for said sales. He was accustomed to buy his stock from day to day and deliver the same to his customers on his route. As declared by himself it was "a mere route." His stock was purchased from Golden & Company, to whom he was indebted to the sum of $7,567.80.

His other business was the sale of feed at Fifth and "K" streets, which was conducted by his son with the aid of a book-keeper. Smith had offered it for sale to a party who he thought would take it, paying the inventory price for stock and fixtures. This inventory made out by himself amounted to $2,946.69. His indebtedness at that time consisted of the account due Golden & Company of $7,567.80, and other unsecured debts aggregating about $5,576.54.

Smith thought that if he could complete the sale of his house and lot and the feed business he would be able to pay all of his debts.

He approached Golden & Company with a view to sell them his house and lot. They purchased at $8,000, cash, subject to the mortgage of $3,000, which, however, was not assumed.

The conveyance was made June 8, 1908, to one Daniel, who was a stockholder of Golden & Company. Golden & Company deposited the money in bank to meet Daniel's check. On the same day he delivered his check to Smith for $8,000, and received the deed. Smith then gave his check to Golden & Company for $7,567.80 and another for $106.85 to cover interest then due on the mortgage and taxes due on the property.

Smith remained in possession of the property as a tenant of Daniel, who held it for Golden & Company. It is true that Smith testified that he did not know that he was insolvent at the

time, and had no intention to prefer Golden & Company, and that the officers of Golden & Company testified that they had no intention of receiving a preference, and had no reason to believe that Smith was insolvent and contemplated a preference. The property conveyed was nearly worth $11,000 at the time of the conveyance, and has since depreciated in value very considerably.

Smith had been a customer of Golden & Company and its predecessor, and had frequently owed them more than on the above date. After the conveyance he continued to buy stock for cash "at his own request." Smith owed at the time of payment $3,368.80 on open account. The remainder of the $7,567.80 consisted of notes not yet due, of which $1,000 had been discounted with a bank by Golden & Company. These notes were not indorsed by anyone.

The presiding justice, in an opinion reviewing the whole of the evidence, found that Smith made the conveyance with the intention to prefer, and that Golden & Company had reasonable cause to believe that Smith was insolvent.

*Mr. W. A. Johnston* and *J. J. Darlington* for Golden & Company.

*Mr. Wharton E. Lester* for Lucas P. Loving, Trustee in Bankruptcy.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

Having examined the testimony, we find nothing to indicate error in the court's finding. There was no error in refusing plaintiff's prayer for a decree for the amount of money paid Golden & Company as a preference. Vacating the deed is sufficient relief. We find no error in the denial of the application of Golden & Company to make it a condition of plaintiff's relief that they should be admitted to participate as a creditor

in the distribution of the bankrupt's assets to the full amount of the debt due June 8, 1908.

Under certain conditions, which do not exist in this case, the relief might well have been granted with the condition as prayed for.    See *Page* v. *Rogers,* 211 U. S. 575, 581, 53 L. ed. 332, 335, 29 Sup. Ct. Rep. 159.

As the property is required to be reconveyed to the trustees, and the amount of the dividend may not now be ascertained, the court did not err.    It did not deny the right of Golden & Company to prove their claim for the surrender of the preference.    See Keppel v. Tiffin Sav. Bank, 197 U. S. 356, 373, 49 L. ed. 790, 796, 25 Sup. Ct. Rep. 443.

The decree is affirmed, each party to pay his own costs on appeal.                              *Affirmed.*