HARRISON E. BARRINGER, TRUSTEE IN BANKRUPTCY OF THE
ESTATE OF SMITH, FLETCHER CRAWFORD COMPANY,
*Appellant,* v. GUARANTY TRUST & SAVINGS BANK, JAMES
Y. WILSON, AND THE GUARANTY COMPANY, *Appellees.*

Opinion Filed March 4, 1924.

Petition for Rehearing Denied March 27, 1924.

This case was decided by Division A.

A bill in chancery by a trustee in bankruptcy against certain
   parties to whom the bankrupt transferred accounts receivable
   within four months prior to the filing of the petition in
   bankruptcy alleging that such transfer of accounts operated
   to give a preference to some creditor over other creditors
   and operated as a fraudulent transfer of the bankrupt's
   property for the purpose of hindering or delaying the bank-
   rupt's creditors, and that such fact and purpose were known
   to the transferee, contains equitable grounds for relief such
   as an accounting of the moneys received upon the accounts
   receivable and an injunction to restrain the assignee from
   disposing of any of the accounts assigned to him by the
   bankrupt.

An Appeal from the Circuit Court for Duval County;
Daniel A. Simmons, Judge.

Decree reversed.

*Marks, Marks & Holt, Watson & May* and *Martin H.
Long,* for Appellant;

*W. M. Bostwick, Jr.,* and *Joseph M. Glickstein,* for
*Appellees.*

ELLIS, J.—This is an appeal from an order sustaining a demurrer to a bill in chancery and dismissing the same.

The bill was brought by H. E. Barringer, as Trustee in bankruptcy of the estate of Smith, Fletcher Crawford Company, against Guaranty Trust & Savings Bank, James Y. Wilson and The Guaranty Company, to declare a transfer, by the bankrupt, of certain accounts receivable to the Guaranty Trust & Savings Bank to be void; for an accounting of the moneys received upon such accounts receivable; to require James Y. Wilson to pay to the Trustee the amount for which he became indebted to the bankrupt and which account was transferred by the bankrupt to the Guaranty Trust & Savings Bank and to restrain the Guaranty Trust & Savings Bank from disposing of any of its assets until the further order of the court.

The bill rests upon the theory that Trustee in Bankruptcy, succeeds too all the property of the bankrupt, except such as is exempt, as representative of the creditors and not of the bankrupt; and is subrogated to the rights of creditor as to particular property which the bankrupt has transferred with intent to defraud his creditors or to give a preference, and he holds title to such property for the creditors and for the purpose of distribution among them. And that a Trustee in bankruptcy may attack any transaction between the bankrupt and a third person, occuring within four months prior to the filing of the petition in bankruptcy, in which a preference was given to some creditor of the bankrupt over other creditors of the same class, or which amounted to a fraudulent transfer of the bankrupt's property for the purpose of hindering or delaying the bankrupt's creditors; and that a court of equity of the State has jurisdiction to hear and determine such controversy. See Wall v. Cox, 101 Fed. Rep. 403; Hobbs v. Frazier, 61 Fla. 611, 55 South. Rep. 848; Bardes

v. Hawarden Bank, 178 U. S. 524-537, 44 L. Ed. 1175, 20 Sup. Ct. Rep. 1000; Simpson v. Western Hardware & Metal Co., 227 Fed. Rep. 304.

See also Wall v. Cox, 181 U. S. 244, 45 L. Ed. 845, 21 Sup. Ct. Rep. 642, in which the case first reported in 101 Fed. Rep. 403 was reversed on the question of jurisdiction by the Federal District Court to entertain the bill in chancery. The court citing with, approval, however, the case of Bardes v. Hawarden Bank (First Nat. Bank) 178 U. S. 524.

The Bill alleges that in July, 1921, Smith, Fletcher Crawford Company, a corporation, was duly adjudged a bankrupt. That in May, 1921 it was insolvent and was indebted to the Guaranty Trust & Savings Bank in the sum of ten thousand dollars on notes, some of which were not due. That on the 19th of May, 1921, James Y. Wilson, at the request of the Bank, purchased on credit from the bankrupt its entire ''merchantable stock of merchandise;'' amounting to nine thousand nine hundred and fifty dollars and seventy-two cents and became indebted to the bankrupt in that sum. That upon the next day the bankrupt, at the Bank's request, transferred to it the Wilson account and other accounts due to the bankrupt amounting to eight thousand eight hundred seventy-eight dollars and thirty-nine cents; making a total of eighteen thousand eight hundred twenty-nine dollars and eleven cents. That thereupon the bankrupt's notes to the Bank were ''torn up and destroyed, the Bank pretending that the transaction was a ''sale and a satisfaction'' of the bankrupt's obligations to the bank.

It is alleged that the transaction which occurred within four months prior to the filing of the petition in bankruptcy was with intent to hinder, delay and defraud the creditors of the bankrupt and that such was its effect.

That the transaction was made with intent to prefer the Guaranty Trust & Savings Bank over the other creditors of the same class. That the transaction occurred when the Smith, Fletcher Crawford Company was insolvent and its condition of insolvency was known to the Bank, which knew that the transfer would create a preference in its favor over creditors of the same class.

The bill also alleges that the Guaranty Trust & Savings Bank is in the hands of a receiver, that it has sold a portion of its assets to the United States Trust Company and a portion to The Guaranty Company which has full knowledge of "each and every of the foregoing matters."

The bill contained equity upon either of two hypotheses: that the transaction amounted to the giving by the bankrupt of an illegal preference to the bank; or a transfer within four months prior to the filing of the petition in bankruptcy for the purpose of hindering, delaying or defrauding the bankrupt's creditors. All the elements of either character of the transaction are distinctly alleged in the bill.

Upon the theory that the transfer of the accounts amounted to an illegal preference it is alleged that the Smith Fletcher Crawford Company was at the time insolvent; that the bank knew it and that the transaction was intended, by both, as a preference of the Bank's claim over others of the same class and that it actually had that effect. Upon the other theory it is definitely alleged that the transactions were made with intent to hinder, delay and defraud the creditors of the bankrupt and that such was its effect.

"In determining whether a particular transfer was fraudulent, the circumstances of each case as they are made to appear must govern, and it is not possible to lay

down any fixed rule which will govern in all cases." See 7 C. J. 172.

The allegations as to the intention to defraud other creditors, taken in connection with the allegations of the bankrupt's insolvency, the Bank's knowledge of it and the procurement by it of the transfers in the knowledge that the effect would be to prefer its claim over others of the same class, are sufficiently clear as to intention by the debtor and collusion of transferee.

The contention that the Trustee has been guilty of laches is without merit because the defendant, if compelled to surrender an unlawful preference will be entitled to prove its claim and receive a dividend on it upon an equality with other creditors. See Page v. Rogers, 211 U. S. 575, 53 L. Ed. 332, 29 Sup. Ct. Rep. 159.

The decree of the Chancellor is reversed.

TAYLOR, C. J., and BROWNE, J., concur.

WHITFIELD, P. J., and WEST and TERRELL, J. J., concur in the opinion.