## In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.

United States District Court
S. D. New York.
Feb. 17, 1966.

See also, D.C., 240 F.Supp. 369.

Samuel P. Adelman, New York City, for petitioner.

Seligson & Morris, New York City, for trustee; Harvey R. Miller, New York City, of counsel.

BONSAL, District Judge.

Petitioner, One Estate, Inc., seeks review of an order of Referee Ryan dated December 6, 1965, which authorized the Trustee in Bankruptcy of Ira Haupt & Co., Bankrupt (Trustee) to compromise a controversy with the New York Stock Exchange and with certain named banks, and which approved a proposed Amended Settlement Agreement (the Agreement) between the parties to the controversy, a copy of which is attached as Exhibit "A" to the Referee's order. For the reasons hereinafter stated, the Referee's order is affirmed and the petition for review is denied.

On November 20, 1963 Ira Haupt & Co. (Haupt) was in acute financial difficulties as a result of the so-called salad oil scandal and was suspended from further trading on the New York Stock Exchange (Stock Exchange). In order to preserve public confidence in the stock market and for the protection of Haupt's public customers, its general partners

(and the estate of a deceased general partner) entered into an agreement (known as the "November 25" agreement) with the Stock Exchange and Haupt's banks for the "orderly liquidation" of the business of Haupt. Under the November 25 agreement, the Stock Exchange advanced a total of $9,500,000 and the banks deferred their claims against Haupt to the extent of $2.00 for every $1.00 advanced by the Stock Exchange. The purpose of this unique and effective operation was to enable the Liquidator appointed under the November 25 agreement to pay or purchase the claims of Haupt's public customers. The facts surrounding the November 25 agreement are fully set forth in Judge Palmieri's opinion of August 11, 1964, D.C., 234 F.Supp. 167, and need not be repeated here.

During the months of February and March of 1964 the banks which were parties to the November 25 agreement received payments from the Liquidator aggregating $15,735,732.34 on account of their claims against Haupt, and by early March, 1964, all but 100 to 150 customers' claims out of 20,000 had been liquidated. After an abortive Chapter XI proceeding, Haupt went into bankruptcy following an involuntary petition filed against it on March 23, 1964.

In the bankruptcy proceeding, the banks which were parties to the November 25 agreement and the Stock Exchange filed proofs of claim aggregating $29,043,227.28, which included the claim of the Stock Exchange for the $9,500,000 advanced by it under the November 25 agreement and which was subordinated to the claims of the banks.

The Trustee, who was appointed on October 6, 1964, filed applications under Section 57(g) of the Bankruptcy Act (11 U.S.C. § 93(g)) with respect to each of the claims filed by the banks, alleging that the payment received by each bank from the Liquidator constituted a preference (Section 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a)). In its applications, the Trustee sought the disallowance of the claims of the several banks unless the payments received by them from the Liquidator were paid to the Trustee with interest. Each of the banks filed an answer denying that the payments received by it from the Liquidator constituted a preference under the Bankruptcy Act. There followed negotiations between the Trustee, the banks and the Stock Exchange, resulting in the Agreement which is the subject of this petition for review. Briefly summarized, the Agreement provides:

(1) The banks and the Stock Exchange will defer receiving any amounts on their claims until all remaining customers' claims have been paid in full out of the assets in the hands of the Trustee. If such assets are insufficient, the banks will turn over to the Trustee sufficient funds to pay such claims in full plus an amount to cover the Trustee's commissions.

(2) The banks and the Stock Exchange will defer receiving any amounts on their claims until all other parity creditors receive out of the remaining assets in the hands of the Trustee, dividends up to a proportion of their claims equal to the proportion of the banks' claims represented by the payments received by them from the Liquidator, plus interest at the rate of 6% from February 20, 1964. If the assets in the hands of the Trustee should be insufficient to make such payments with interest, the banks will pay to the Trustee sufficient funds to enable him to do so, thereby putting the banks and the parity creditors on an equal footing.

(3) If after making the distributions provided in (1) and (2) there are assets remaining in the hands of the Trustee, they will be used for the payment of further dividends to the banks and the other creditors pursuant to the Bankruptcy Act.

(4) If the claims of the banks are determined to be invalid *in toto*, the banks will pay to the Trustee the amounts received from the Liquidator with interest at the rate of 6% per annum.

(5) The Trustee will waive commissions with respect to amounts received

by the banks from the Liquidator except to the extent that the banks are required to make the payments to the Trustee as provided in (1) and (2) above.

(6) The banks and the Stock Exchange will submit to the summary judgment of the Bankruptcy Court with respect to the enforcement of the Agreement and expressly waive any defenses which they may have under the statute of limitations.

(7) The Agreement is conditioned on approval by the Bankruptcy Court.

The Agreement, subject to the approval of the court, was entered into by the parties on June 17, 1965 and was the subject of hearings before the Referee on September 21, 1965, October 5, 1965 and October 20, 1965.

Notice of the Trustee's application for approval of the Agreement was sent to 1800 creditors and interested parties, and was duly published. Only petitioner and the limited partners of the bankrupt filed objections. The objections filed by the petitioner and the limited partners of the bankrupt were the subject of detailed consideration by the Referee at the hearings above mentioned. Various amendments were made in the Agreement before it was approved by the Referee. Following the close of the hearings, counsel for the limited partners, by letter to the Referee dated November 11, 1965, indicated informally various objections to the Agreement in connection with the settlement of the final order approving it. However, the limited partners have not sought review of the Referee's order approving the Agreement.

■ Petitioner opposed the Agreement from the outset. It contends that the Agreement is so confused and complicated that it can only breed litigation in the administration of the bankrupt estate, to the detriment of the creditors.[1] There is no merit to petitioner's contention. The fact that out of the 1800 creditors

and other interested persons who received notice of the Trustee's application to approve the Agreement only the limited partners and petitioner raised any objections adequately answers it. The court agrees with the Referee that the terms of the Agreement sufficiently reflect the rights and obligations of the parties thereto, including the Trustee, and that it promises to reduce rather than increase litigation.

Petitioner's primary contention is that the preference allegedly received by the banks is so obvious from the record that there was no controversy to settle, and that the banks should have been required to turn over to the Trustee all amounts received by them from the Liquidator. According to the petitioner, had this been done, the assets of the bankrupt estate would have been distributed to the creditors as provided in the Bankruptcy Act, with the banks having the same status as the other creditors.

■ It does not appear that the monies received by the banks from the Liquidator so clearly constituted preferences that they should have been required to pay them to the Trustee forthwith. It is true that under the Agreement the banks presently have the use of the monies which they received from the Liquidator while other creditors must await distributions from the bankrupt estate. On the other hand, the resolution of the preference issue absent the Agreement would doubtless have been the subject of protracted litigation between the Trustee and the banks and the Stock Exchange, so that even if the Trustee was eventually successful, it is not clear that the other creditors would have been better off. These were matters for the Referee to determine in the first instance and it cannot be said that his decision to approve the Agreement after hearings was an abuse of discretion or not supported

---

1. Three quarters of petitioner's 100-page brief is devoted to an attack on the Trustee on the ground that he was elected by and is subservient to the banks. If there is any merit to this contention, which does not appear from the record, it is sufficient to say that the question is not before the court in this proceeding.

by sufficient evidence.[2] The authority of the Trustee to enter into the Agreement subject to the approval of the court is clearly provided in Section 27 of the Bankruptcy Act (11 U.S.C. § 50).

In finding that the Agreement was in the interest of the bankrupt estate, the Referee concluded:

"16. The legal result of the Amended Settlement Agreement, Exhibit 'A', is the same as if the Trustee recovered the alleged preferential payments aggregating $15,735,-732.34 plus interest and further assures customer creditors of Haupt whose claims have been filed and are finally allowed within the purview of Section 60e of the Bankruptcy Act, supra, that they will be paid in full."

■ As pointed out in Page v. Rogers, 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332 (1909), it was not necessary to insist on full payment to the Trustee of the amounts of the alleged preferences. The Court stated, at p. 581, 29 S.Ct. at p. 162:

" * * * it is entirely practicable to avoid the circuitous proceeding of compelling the defendant to pay into the bankruptcy court the full amount of the preference which he has received, and then to resort to the same court to obtain part of it back by way of dividend. The defendant may be permitted, if he shall be so advised, to prove his claim against the estate of the bankrupt, and the bankrupt court then may settle the amount of the dividend coming to him, and the final decree may direct him to pay over the full amount of his preference, with interest, less the amount of his dividend."

In re Wright-Dana Hardware Co., 212 F. 397 (2d Cir. 1914).

■■ The Referee in his sound discretion could appropriately find that the Agreement was preferable to litigation even if he felt that the Trustee ultimately would be successful. Scott v. Jones, 118 F.2d 30 (10th Cir. 1941); In re Riggi Bros. Co., 42 F.2d 174 (2d Cir. 1930), cert. denied sub nom. Wood & Selick, Inc. v. Todd, 282 U.S. 881, 51 S.Ct. 85, 75 L.Ed. 777 (1930); Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 94 A.L.R.2d 638 (5th Cir. 1960), 2 Collier, Bankruptcy, 1091, 14th ed. ¶27.05. In the absence of a finding of abuse of discretion, this court may not substitute its own judgment for that of the Referee. In re Prudence Co., 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom. Stein v. McGrath, 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037 (1939).

■ The findings of fact and conclusions of law made by the Referee in the order here under review adequately support the order, and there is nothing in the record to show that any of his findings of fact were clearly erroneous. Therefore, his findings may not be disturbed by the court. General Order 47 of the General Orders in Bankruptcy. See In re G. E. C. Securities, Inc., 223 F.Supp. 861, 863 (S.D.N.Y.1963), aff'd, 331 F.2d 655 (2d Cir. 1964); Margolis v. Nazareth Fair Grounds & Farmers Market, Inc., 249 F.2d 221, 223 (2d Cir. 1957).

The order of the Referee dated December 6, 1965 is affirmed, and the petition of One Estate, Inc., for review of said order is hereby denied.

It is so ordered.

---

2. No testimony was taken before the Referee and none was offered by anyone, including the petitioner. However, the uncontradicted history of the events which led up to the Agreement was fully set forth in the record in the Bankruptcy Court.