**In re CHASE & SANBORN CORPORATION, f/k/a General Coffee Corporation, Debtor.**

**Bankruptcy No. 83–000889 BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Jan. 30, 1991.

■

Ronald G. Neiwirth, P.A., Miami, Fla., David L. Katsky, Esanu Katsky Korins & Siger, New York City, for the Creditor Trustees.

Alan G. Greer, Floyd Pearson Richman Greer Weil Zack & Brumbaugh, P.A., Miami, Fla., Alan H. McLean, Hughes Hubbard & Reed, New York City, for Arab Banking Corp.

## MEMORANDUM AND ORDER RE: CREDITOR TRUSTEE'S MOTION UNDER SECTION 502(d) OF THE BANKRUPTCY CODE (II)

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court on January 2, 1991 on the motion of Paul C. Nordberg, the Creditor Trustee of the Estate of the Debtor, for an order under Section 502(d) of the Bankruptcy Code disallowing all of the claims in this bankruptcy case of Arab Banking Corporation ("ABC"), unless within ten days of the entry of an order on this motion in the Creditor Trustee's favor ABC pays to the Creditor Trustee $1,550,000 representing two voidable preferences that it previously received. ABC opposes the motion on the ground that it is premature. For the reasons discussed below, the motion is granted.

*The Facts*

The facts are not in dispute. In 1986 the Creditor Trustee commenced an adversary proceeding against ABC, a commercial bank, to recover certain voidable transfers (hereinafter *"Arab I "*). The Bankruptcy Court and the District Court initially ruled

against the Creditor Trustee's claims. On appeal the Eleventh Circuit by decision dated June 27, 1990 reversed, holding that ABC had received voidable preferences totalling $1,550,000 from the Debtor and that the preferences were recoverable from ABC under Section 550 of the Bankruptcy Code. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 592–97, 599–600 (11th Cir.1990). The Circuit Court's decision is now final and not subject to further review as the time for ABC to appeal, i.e., to petition the Supreme Court for a writ of certiorari, has expired.

ABC has not to date paid to the Creditor Trustee the two preferences totalling $1,550,000.

ABC for its part has made claims against the Debtor's Estate. First, ABC asserted an $11 million fraud counterclaim against the Creditor Trustee in *Arab I*. Additionally, ABC filed a proof of claim in this bankruptcy case, which the Creditor Trustee challenged in a contested matter in this Court (hereinafter "*Arab II*").

In *Arab I* this Court rejected ABC's fraud counterclaim. In *Arab II* this Court rejected ABC's $3.3 million fraud and $1.2 million constructive trust claims (while allowing a $5.3 million claim based on the Debtor's guarantee of ABC's loan to a third party). Those rulings in *Arab I* and *Arab II* are pending in various stages of appeal or remand from appeal.

*Arab I* and *Arab II* are not the only litigations in which the Creditor Trustee is involved in this bankruptcy case. The Creditor Trustee previously obtained a $1.68 million judgment in a bench trial against Granfinanciera, S.A. and Medex, Ltd., but the United States Supreme Court reversed the judgment on the ground that the defendants were entitled to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). That litigation is now on remand before the District Court where it will be tried to a jury. In addition, the Creditor Trustee informs the Court that he is about to commence exequatur proceedings in Colombia to try to collect on over $8 million in judgments obtained by the Estate in this

bankruptcy case against Colombian entities. Further, it is uncertain at this time how large a claim ABC will be allowed (assuming it repays the preferences). It is also uncertain how much prejudgment interest the Creditor Trustee will recover from ABC; the prejudgment interest question, according to representations made by the Creditor Trustee's counsel at the January 2 hearing and in his briefs, involves millions of dollars and will require lengthy litigation. Finally, the Court is informed, ABC's claim for over $750,000 in attorneys' fees remains to be determined.

While *Arab II* was on appeal in the District Court, the Creditor Trustee moved in that Court for an order under § 502(d) disallowing ABC's claims in bankruptcy (and dismissing the appeal as moot). Before the § 502(d) motion was fully briefed, however, the District Court decided the *Arab II* appeal on October 18, 1990 and remanded specific questions to this Court for further proceedings. (That order has been stayed and *Arab II* remains on appeal in the District Court while that Court considers a pending motion for rehearing.) In a separate order, the District Court declined to reach the merits of the § 502(d) motion and, instead, denied the motion without prejudice to its renewal before this Court.

*The Governing Law*

■ ABC contends that the Creditor Trustee's § 502(d) motion is premature and should be denied because "the Debtor's liability on ABC's fraud counterclaim in '*Arab I*' and the Supremo Loan constructive trust claim in '*Arab II*' are potential offsets against any liability which ABC may have to the Trustee for preferential transfers". ABC Mem. at 3. The governing law does not permit an offset under the facts here.

■ Section 502(d) provides, in substance, that a creditor's claims against an estate must be disallowed in their entirety if the creditor has obtained a preference from the debtor and has not repaid that preference. The law in this Circuit and elsewhere is that (except for a narrow but inapplicable exception) a creditor cannot set off his claims against his obligation to re-

turn preferences to the estate. *Shaw v. Walter E. Heller & Co.*, 385 F.2d 353, 357–58 (5th Cir.1967),[1] *cert. denied*, 390 U.S. 1003, 88 S.Ct. 1248, 20 L.Ed.2d 104 (1968); *Walker v. Wilkinson*, 296 F. 850, 852 (5th Cir.), *cert. denied*, 265 U.S. 596, 44 S.Ct. 639, 68 L.Ed. 1198 (1924); *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir.1984); *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, 38 B.R. 829 (Bankr.M.D.Ga.1984); 4 *Collier on Bankruptcy*, ¶ 553.09, at 553–49–50 (15th ed. 1990). As Collier explains:

> The reasoning for this rule is that allowing the creditor to set off the amounts owed by the debtor against the preferential payments received would merely continue the preference and render the preference statute useless, because the preferences would not become available for *pro rata* distribution to all creditors. Moreover, section 502(d) bars the allowance of a claim of a creditor that has received a preference unless the preference is returned.

4 *Collier on Bankruptcy, supra*, at 553–49–50.

The limited exception to the rule barring setoffs against preferences is set forth in *Page v. Rogers*, 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332 (1909). That exception, however, does not apply here. In *Page*, the bankruptcy "litigation ha[d] come to an end" and "a final decree [was] to be entered." 211 U.S. at 581, 29 S.Ct. at 162. In those circumstances, the Supreme Court permitted a preferred creditor to deduct, or setoff, the amount of the distribution he was entitled to receive as a dividend from the estate from the amount of the preference he was required to pay back. The Supreme Court reasoned that it made no practical sense to have the creditor pay the preference and then immediately receive his dividend. *Id.* Subsequent authority has limited *Page* to its facts and permitted a setoff by a preferred creditor only if "the dividend can be quickly and easily determined, and the dividend is immediately payable." *In re Gander Mountain, Inc.*, 29

B.R. 260, 265 (Bankr.E.D.Wis.1983). *See also* 4 *Collier on Bankruptcy, supra*, at 553–50 n. 3.

The dividend in this bankruptcy case cannot be "quickly and easily determined" and is not "immediately payable." The amount of the dividend will depend on (1) the Creditor Trustee's recovery, if any, in the pending adversary proceeding against Granfinanciera, S.A. and Medex, Ltd. seeking $1.68 million; (2) the Creditor Trustee's success in the exequatur proceedings in Columbia involving in excess of $8 million in judgments; (3) how large a claim ABC will be allowed; (4) how much prejudgment interest, if any, the Creditor Trustee will recover from ABC; and (5) how much, if any, of the over $750,000 in attorneys' fees sought by ABC will be allowed as part of its unsecured claim. The pendency of these matters renders it impossible to know at this time with any reasonable degree of certainty how much the Creditor Trustee will ultimately collect, how much he will expend in pursuing the open matters and how large the aggregate claims against the Estate will be. Consequently, the precise dividend to creditors of the Estate will not be known and final distributions to those creditors will not be payable for some time.

The cases on which ABC relies to support its claim of setoff are inapposite. To the extent that ABC relies on *Page*, such reliance is misplaced given the facts here. To the extent that ABC relies on *Matter of Davis*, 889 F.2d 658 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990), such reliance is also misplaced. *Davis* involved mutually owing prepetition debts for which there is a specific statutory right to a setoff under Section 553(a) of the Bankruptcy Code. Here, ABC seeks to setoff prepetition claims against a post-petition preference recovery. Section 553(a) does not by its terms permit the setoff of such claims and the controlling law, as discussed above, does not otherwise permit it.

---

**1.** Decisions of the former Fifth Circuit are binding in this Circuit. *Bonner v. City of Prichard,*

661 F.2d 1206 (11th Cir.1981) (en banc).

ABC also argues that it is entitled to a setoff of its counterclaim in *Arab I* based on Chief Judge Britton's decision in that proceeding. In his decision Judge Britton found that there was no evidence in the record to support the counterclaim. As an alternative ground for rejecting the counterclaim he also found that it was untimely because it was not asserted until after the claims bar date, and in this regard he added:

> This claim is barred, therefore, except as an offset against any recovery effected by the plaintiff against this defendant. *Slaw Construction Corp. v. Hughes Foulkrod Construction Company (In re Slaw Construction Corp.)*, 17 B.R. 744, 748 (Bankr.E.D.Pa.1982).

*Nordberg v. Arab Banking Corporation*, Adv. No. 86–0493–BKC–TCB–A, Mem.Dec. at 13 (Bankr.S.D.Fla. Sept. 19, 1986).

■ Given that Judge Britton found that the counterclaim was unproved and untimely and that he dismissed all of the Creditor Trustee's voidable transfer claims, including the preferences, so that the Creditor Trustee was awarded nothing against which ABC could net its counterclaim, Judge Britton's suggestion that the counterclaim might be a setoff was moot and dictum. More importantly, Judge Britton's statement regarding setoff conflicts with well-established precedent.[2]

In sum, there is no basis for the setoff sought by ABC and thus no reason to delay decision of the Creditor Trustee's § 502(d) motion until ABC's counterclaim in *Arab I* and its claims in *Arab II* are finally determined.[3] Upon its payment to the Estate of the $1,550,000 in preferences in accordance with this Order, ABC may continue the litigation of its outstanding claims against the Estate. *See, e.g.,* 11 U.S.C. § 502(d); *In the Matter of Eye Contact, Inc.,* 97 B.R. 990, 992 (W.D.Wisc.1989); *In re W & T Enterprises, Inc.,* 84 B.R. 838, 840 (Bankr. M.D.Fla.1988).

The Court being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that the Creditor Trustee's motion under § 502(d) is granted and that all of ABC's claims in this bankruptcy case are disallowed, unless ABC within ___ days from the date of this order pays to the Estate the sum of $1,550,-000 representing the principal amount of the two voidable preferences it received from the Debtor.

DONE and ORDERED.

---

**2.** The only case relied on by Judge Britton was *Slaw* which involved mutually owing prepetition debts subject to setoff under § 553(a), and not, as here, an effort to setoff prepetition claims against post-petition preference recoveries. Thus, *Slaw* is inapplicable.

**3.** The Court notes that ABC, a commercial bank, has held and had the use and benefit of the two preferences since March 1983, or for almost eight years. ABC actively litigated the preference issue through trial, an appeal to the District Court, a further appeal to the Eleventh Circuit and is now before this Court on the instant motion. ABC is presently litigating against the Creditor Trustee its counterclaim in *Arab I* and its fraud and constructive trust claims in *Arab II.* Section 502(d) is designed to foster the "restoration" of assets to a debtor's estate and to preclude a preferred creditor from burdening an estate with continuing litigation unless he first pays back any preference he has received. *Keppel v. Tiffin Sav. Bank,* 197 U.S. 356, 25 S.Ct. 443, 444–45, 49 L.Ed. 790 (1905); *Irving Trust Co. v. Frimitt,* 1 F.Supp. 16, 18 (S.D.N.Y.1932); *Matter of Mid Atlantic Fund, Inc.,* 60 B.R. 604, 609–10 (Bankr.S.D.N.Y.1986); *Matter of Georgia Steel, Inc.,* 38 B.R. 829, 839 (Bankr.M.D.Ga.1984). Delay in the entry of a § 502(d) order in this case will prejudice the Estate by preventing prompt recovery of the preferences while at the same time subjecting the Estate to the continuing burden of multiple litigations with ABC. On the other hand, delay will benefit ABC for it will continue to have the use and financial benefit of the $1,550,000 while remaining free to press forward with its litigations against the Estate without disgorging the preferences. These considerations further support granting rather than delaying the § 502(d) motion.