### PUGET SOUND ELECTRIC RY. v. FELT et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

#### No. 1,831.

1. CARRIERS (§ 347*)—SETTING DOWN PASSENGERS—TIME TO ALIGHT—JUMPING FROM MOVING TRAIN—NEGLIGENCE.

   Where a carrier either did not stop the train on which decedent was riding at all at the station where he desired to alight, or did not stop for a sufficient length of time to enable him to get off while the train was stationary, decedent was not per se negligent in alighting while the train was moving slowly.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1393, 1402; Dec. Dig. § 347.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CARRIERS (§ 333*)—ALIGHTING FROM TRAIN—CONTRIBUTORY NEGLIGENCE.**

A passenger is not negligent in alighting from a moving train if the speed of the train and all the surrounding circumstances are such that a person of ordinary prudence would have done the same thing.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1391–1393; Dec. Dig. § 333.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by Susan E. Felt and others against the Puget Sound Electric Railway. Judgment for plaintiffs, and defendant brings error. Affirmed.

See, also, 175 Fed. 477.

B. S. Grosscup and W. C. Morrow, for plaintiff in error.

W. C. Sharpstein, A. P. Black, George Clark, and Loveday, Kelley & McMillan, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. This action was brought in the court below by the widow and minor children of Horace Felt, deceased, to recover damages alleged to have been sustained by reason of his death on the 20th of November, 1908. The deceased got upon the interurban electric railroad train of the plaintiff in error running from Seattle to Tacoma, in the state of Washington, at Auburn station, and purchased a ticket to Valley City station, where he intended to get off. The only alleged grounds of negligence on the part of the railroad company relied upon by the plaintiffs in the court below, who are the defendants in error here, were the alleged failure of the defendant to stop its train at Valley City a sufficient time to enable passengers to alight, and the alleged sudden starting of the train from Valley City station with a jerk, thereby causing the deceased to fall against and under the train, resulting in his death. The trial having resulted in a verdict and judgment for the plaintiffs, the defendant company has brought the cause here by writ of error, relying upon alleged error of the trial court in refusing to direct a verdict for the defendant, and its alleged errors in the giving and refusal to give certain instructions to the jury.

A careful perusal of the record fails to disclose any evidence tending to show the starting of the train from Valley City with a jerk. The evidence is substantially conflicting in respect to the length of time the train on which the deceased was a passenger stopped at that station, and, indeed, as to whether it stopped there at all on the occasion in question. More than one witness on behalf of the plaintiffs testified that it did not stop there, while there was some testimony on the part of the defendant company tending to show that it stopped for from 1 to 1½ minutes. The train consisted of three coaches, the first of which was a smoker, in which the deceased rode with a companion named Gentry, and one or two other men. There was evidence given going to show that the deceased and Gentry had passed the afternoon in a saloon in Auburn playing pool and cards, and boarded the train

at Auburn about 6 o'clock in the evening, and there was testimony tending to show that as the train reached Valley City the deceased was in the act of taking a drink from a flask or bottle of whisky, and that, upon discovering that the place was the station at which he desired to get off, he jumped from his seat and started for the door of the smoking car, and, upon reaching the lower step of the platform of that car, took hold of the hand-hold upon the car and jumped, holding onto the handle; that he was dragged a few feet and then fell between the platform and train; that the emergency bell was rung by the brakeman and the motorman brought the train to a stop about 150 or 200 feet from the south end of the platform, when the body of the deceased was removed. The brakeman referred to testified on behalf of the company that, "as they approached Valley City, he called the station several times, and assisted some old ladies with their baskets in alighting, jumping off the train before it stopped," and that, when he saw the deceased about to get off, he (the witness) jumped down to the bottom step of the second car and made a grab for the deceased. "He dragged," continued the witness, "over the first cattle guard all right, and, going across the road crossing, I said, 'For God's sake, let go.' I knew he would not let go. I didn't know whether he was hurt at the first crossing or not, but I knew the second cattle guard on the other side would catch him, because they were built opposite to the first cattle guard, and I jumped for the emergency bell, but we run for, I guess, 150 feet before we stopped." On cross-examination the brakeman testified that at the time he gave the signal to the motorman to go ahead from Valley City he did not see any one trying to get off the second car; that he did see some men on the platform of the smoker, but did not know whether they wanted to get off or had just gotten on. "Before I gave the signal to start the train," continued the witness, "I did not look to see whether there was anybody wanting to get off the smoker. I did not make any investigation to see whether there were other passengers to get off the train. I was in a hurry. We have to hurry to make the time and make the stops at the stations as short as possible in order to make the time we are required to make. It is jump and get from the minute you leave Seattle until you get to Tacoma."

E. S. Bateman, another witness for the defendant company, testified, among other things, that "the car was moving very slowly at the time Felt attempted to get off."

In view of the testimony here referred to, it is plain that, unless we are prepared to hold that the mere alighting by a passenger from a train while it is in motion is per se negligence, the trial court would not have been justified in taking this case from the jury. The cases in respect to that question are very numerous and are more or less conflicting. Our opinion is that where, as in the case in hand, there is testimony tending to show that the railroad company either did not stop at all, or did not stop at the station to which the passenger had purchased a ticket for a sufficient length of time to enable him to get off while the train remained stationary, the alighting by the passenger at such station while the train is moving very slowly is not necessarily negligence on his part, and that, if the speed of the train and all the surrounding

circumstances were such that a person of ordinary prudence would have done the same thing, such passenger cannot be justly said to have been guilty of contributory negligence.

Such was the effect of the instructions given to the jury by the learned judge of the court below, and, we being further of the opinion that the instructions given sufficiently covered the law of the case, we affirm the judgment.

The judgment is affirmed.