In re EDELEN.

In re MOORE et al.

(District Court, W. D. Kentucky. February 12, 1918.)

1. BANKRUPTCY ⊜⟹328—TIME FOR FILING CLAIMS—CLAIMS LIQUIDATED BY LITIGATION.

In Bankruptcy Act July 1, 1898, c. 541, § 57n, 30 Stat. 560 (Comp. St. 1916, § 9641), which provides that "claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication, or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment," the provision extending the time in cases of claims liquidated by litigation applies only to cases in which judgment is rendered within 30 days before or within 30 days after the expiration of 1 year, and the clause in no case authorizes the filing of claims later than 1 year and 90 days after the adjudication.

2. BANKRUPTCY ⊜⟹328—TIME FOR FILING CLAIMS—CLAIMS LIQUIDATED BY LITIGATION.

Such clause applies only to unliquidated claims, which are liquidated pursuant to directions of the bankruptcy court, as provided in Bankruptcy Act, § 63b (Comp. St. 1916, § 9647).

3. BANKRUPTCY ⊜⟹328—TIME FOR FILING CLAIMS—STATUTORY LIMITATION.

Bankrupt and others executed a joint contract of guaranty to a bank to secure any indebtedness which might be made to the bank by note or otherwise by a corporation of which they were stockholders and officers; one of them, as treasurer, being authorized to sign notes in behalf of the corporation. The contract clearly stated that as between themselves each of the guarantors should be liable in proportion to the stock held by him. Two years and a half after the bankruptcy the bank brought suit on notes of the corporation against all the guarantors, except bankrupt, and recovered judgment, which was paid by the defendants, who then filed claims against the estate for the bankrupt's share under the contract. No claim had been filed by the bank, nor by the guarantors, which might have been done, at least provisionally, under Bankruptcy Act, § 57i (Comp. St. 1916, § 9641). *Held*, that the suit by the bank was not one to liquidate a claim against the estate, but that, even if so, the claims were filed too late, and were not provable under section 57n.

In Bankruptcy. In the matter of R. H. Edelen, bankrupt. On review of order of referee sustaining objections to claims of Thomas S. Moore and others. Order affirmed.

J. D. Wickliffe, of Bardstown, Ky., and A. E. Willson, of Louisville, Ky., for claimants.

J. S. McElroy and J. Van Dyke Norman, both of Louisville, Ky., for trustee.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALTER EVANS, District Judge. The Distillers' Cooperage Company was a corporation doing business at Bardstown, Ky. Certain stockholders therein and persons otherwise interested in it executed to the People's Bank of Bardstown a contract in writing in the following terms:

"Whereas, the Distillers' Cooperage Company, of Bardstown, Nelson county, Kentucky, a corporation duly created under and by virtue of the laws of the commonwealth of Kentucky, keeps its accounts and deposits with the People's Bank of Bardstown, Nelson county, and state of Kentucky, and in the conduct and operation of its business and affairs, it is necessary for said Distillers' Cooperage Company to obtain loans, and to create debts and obligations and to execute notes therefor, and to secure the payment of same:

"Now, therefore, we, the undersigned, stockholders and officers of said Distillers' Cooperage Company, stockholders in distillery corporations having an interest in said Distillers' Cooperage Company, do hereby agree, covenant, and bind ourselves with and to the said People's Bank that we will be responsible for and guarantee the payment of all sums of money advanced to or paid for the said Distillers' Cooperage Company by said People's Bank, and will guarantee and pay to said bank all notes, bills, or other demands executed to the said People's Bank by or in the name of said Distillers' Cooperage Company, by L. B. Samuels, treasurer of said Distillers' Cooperage Company, as fully and to have the same effect as if we were personally present and signed each and every note, bill, or demand of said Distillers' Cooperage Company to said People's Bank. This agreement and guaranty on our part to continue and to apply to all indebtedness that may be incurred by said Distillers' Cooperage Company, and to all notes, demands, or bills that may be executed or made by said Distillers' Cooperage Company to said People's Bank from time to time in the future until the respective signers hereto shall have given notice in writing to said People's Bank that they withdraw therefrom, or will not be bound upon any debts or obligations thereafter created, or note or bill or other demands made or executed to said People's Bank.

"It is further agreed that, while each and every person signing this is bound to said bank for the whole amount of each and every debt and obligation, note, bill, or other demand incurred or executed to said bank through L. B. Samuels, Treasurer, the signers hereto as between themselves, are liable only in proportion to the amount of stock held by them, respectively, in the said Distillers' Cooperage Company, the liability of James L. Hackett and Graeme McGowan, being in proportion to the stock held by the Greenbrier Distillery Company, of which they are the owners.

"Witness our hands this March 7, 1912.      Graeme McGowan,
"R. H. Edelen,
"Thos. S. Moore,
"L. B. Samuels,
"Jas. L. Hackett."

In the course of the business of the Cooperage Company with the People's Bank a number of notes were executed to the latter which came within the provisions of the contract. These notes in the aggregate amounted to a great sum. While parts of this indebtedness were discharged by the company a large amount was left to be paid by the guarantors.

Upon some of the notes suits were brought in a state court on September 11, 1917, against all the guarantors except the bankrupt. After demurrers to the answers filed in these cases had been sustained, the defendants declined to plead further, and judgments were rendered in October, 1917, for the amounts sued for. These judgments and the other outstanding notes were paid off by the guarantors other

than the bankrupt. The latter's proportionate part of the joint liability thus met by the other guarantors amounted to the sum of $10,-467.41. The guarantors other than the bankrupt tendered their proof of debt against his estate for that amount. This was done on November 12, 1917, which was over two years and six months after the adjudication was made on April 3, 1915. The trustee objected to the allowance of this claim, and on January 8, 1918, the referee entered an order sustaining the objections and disallowing the claim. It is that order which the court is now asked to review.

[1] The questions to be determined are important and possibly not entirely free from doubt. The objection to the order most strenuously pressed at the argument was based upon section 57n of the act, which reads:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication, or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, and then within sixty days after the rendition of such judgment: Provided, that the right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer."

It was contended by the trustee that the order was correct because the proof of debt was not tendered within one year after the adjudication. On the other hand, it was strenuously urged that good grounds existed for the delay, in that it was caused by an effort to liquidate by litigation the liability of the guarantors, though it is conceded that there was no litigation whatever during the entire period from April 3, 1915, when the adjudication was made, until September 11, 1917, when the suits above referred to were begun upon some of the notes given to the People's Bank. To the suggestion that the litigation referred to was neither by the trustee nor by any of the guarantors seeking to liquidate the liability of the bankrupt to either of them, but was by the holders against the makers and guarantors of the notes, the response was made, first, that the guarantors did not know anything about the notes until about the time they were sued upon; and, second, that the provisions of the act were broad enough to cover any sort of litigation thereon. Upon this state of fact it was insisted that there arose a situation to which the ruling of the Circuit Court of Appeals of the First Circuit in Powell v. Leavitt, 150 Fed. 89, 80 C. C. A. 43, fully applied, and that the ruling in this case should be governed by it.

Powell v. Leavitt was decided January 24, 1907. It held that, though a proof of debt was not made within a year and 60 days after the adjudication, yet as a mortgage given to a creditor by the bankrupt had, in a litigation, been held to have been a voidable preference, the creditor should thereafter be allowed to prove his debt, notwithstanding the lapse of time, and especially as the litigation which had resulted in the annulment of the mortgage had been commenced within a year after the adjudication. Undoubtedly the actual result in that case was in perfect harmony with the decisions of the Supreme Court in Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49

L. Ed. 790, decided in April, 1905, and Hutchinson v. Otis, 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179, decided in June, 1903. In Page v. Rogers, 211 U. S. 575, 581, 29 Sup. Ct. 159, 53 L. Ed. 332, decided in January, 1909, the court even more clearly settled the doctrine. In neither of these cases did the Supreme Court mention or construe section 57n of the act, though in the Keppel Case, 197 U. S. at page 360, 25 Sup. Ct. 444 (49 L. Ed. 790), it did make an important reference to section 57g. The rule which was finally established in these cases was based entirely upon considerations other than such as might arise under section 57n, and we suppose the decision in Powell v. Leavitt might well have been based upon the two first of those cases without allusion to section 57n. However, the Circuit Court of Appeals, while citing the first two of those cases (the other of them not then having been decided), went further and seemed to prefer to rest its decision upon the ground that the words in section 57n, that "if * * * the final judgment therein is rendered within thirty days before or after the expiration of such time then within sixty days after the rendition of such judgment," should be so construed as to mean "if the final judgment therein is rendered thirty days before the expiration of such time or at any time thereafter," thus expunging altogether from the act the words "then within sixty days after the rendition of such judgment" and substituting therefor the words "or at any time thereafter."

Surely this was contrary to the almost, if not quite, universally established rule to the contrary. Innumerable cases decided after as well as before that ruling might be cited to show this, but the following may suffice. A few from Circuit Courts of Appeals are: In re Ingalls Bros., 137 Fed. 517, 70 C. C. A. 101, In re Hawk, 114 Fed. 916, 52 C. C. A. 536, and In re Sampter, 170 Fed. 938, 96 C. C. A. 98. See, also, In re Peck, 168 Fed. 48, 93 C. C. A. 470. Of cases in the District Courts the following may be noted: In re Sanderson, 160 Fed. 278, 20 Am. Bankr. Rep. 396; In re Knosco, 208 Fed. 202, 31 Am. Bankr. Rep. 238; In re Meyer, 181 Fed. 940-906; In re Trion Manufg. Co., 224 Fed. 521, 35 Am. Bankr. Rep. 480; In re Muskoka Lumber Co., 127 Fed. 886; In re Blond, 188 Fed. 452; In re Kemper, 142 Fed. 210, 212; In re Rhodes, 105 Fed. 231; In re Moebius, 116 Fed. 47, 8 Am. Bankr. Rep. 590; Bray v. Cobb, 100 Fed. 270, 3 Am. Bankr. Rep. 788; In re Leibowitz, 108 Fed. 617. Added to these, in In re Paine, 127 Fed. 250, we also had occasion to construe section 57n, and expressed views as follows:

"It may well be that Congress could with wisdom have put into the clause an exception covering cases where there had been a fraudulent concealment of assets; but that was a matter exclusively for Congress to determine, and not for the courts to remedy. This court at least assumes no power to interpolate an exception, and thus put into the statute what Congress declined to embrace therein. The language of the clause is plain and unequivocal. There is no ambiguity about it, and it admits of no construction. The decisions are equally clear to the effect that no proof of debt can be made after the expiration of one year after the adjudication, except in those instances where the period is extended by the act to not exceeding one year and six months. Either period would effectively bar the making of any proofs of debt in this case by any creditor whatever."

It may be said, therefore, with all respect that, as the rule established by the Supreme Court in the cases we have cited fully justified the result in Powell v. Leavitt upon grounds entirely different from those stated in the opinion in that case, the ruling which would expunge the words we have referred to was not necessary to a correct decision of it and therefore possibly was obiter. Other courts, for these reasons, are not bound by that exceptional ruling as a final adjudication of the proper construction of section 57n. Under these circumstances we find ourselves unable to change our former ruling. It may emphasize it to add that we should always have in mind that provision of the Constitution which gives to Congress the power "to establish uniform laws on the subject of bankruptcy throughout the United States." Except as it is subject to other provisions in the Constitution itself, the power, thus bestowed, is without limitation, and the doctrine is elementary (because established by many decisions of the Supreme Court), that Congress may exercise the power thus given within its reasonable discretion. And Congress having in plain terms enacted section 57n of the Bankruptcy Law, the courts have no power to strike out any part of it, and much less to substitute other provisions in lieu of those thus stricken out. Otherwise the courts, and not the Congress, would do the work of legislation in bankruptcy matters.

[2] But even if we suppose to be correct the construction given section 57n in Powell v. Leavitt, we nevertheless think the instant case is clearly distinguishable, because, first, the litigation in that case was begun within a year after the adjudication, and therefore it was possible to have the final judgment rendered within 1 year and 30 days thereafter, while here the litigation was not begun until 2½ years after the adjudication; second, because in this case there was no attempt at giving a preference to any creditor; third, because the fact here is that the litigation in this instance was not a means of liquidating a claim of uncertain amount within the sense of the act, but was the means used by the People's Bank to collect an indebtedness from its debtors other than the bankrupt; and, fourth, nothing was done or attempted to be done under section 63b of the act to bring about the liquidation of claims in dispute between the trustee or the bankrupt and any of the creditors. Section 57n is to the plain effect that claims against a bankrupt shall not be proved subsequent to one year after the adjudication, or if they are liquidated by litigation and the final judgment is rendered within 30 days before or after the expiration of the one year, then the proof may be made within 60 days after the rendition of such judgment. Section 63b provides:

"Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

Strict—indeed proper—ruling might demand that these two provisions should be considered in pari materia in an effort to ascertain what was the intention of Congress, for it could hardly be that Congress did not have one of these sections in view when it finally settled the language of the other, and hence it would logically seem that the "liquidation by litigation" provided for in section 57n was intended to

be achieved through the medium of an application to the bankruptcy court which, under the act, would direct the manner of obtaining that result. Doubtless such directions might include any litigation the court supposed was advisable. In Dunbar v. Dunbar, 190 U. S. at page 350, 23 Sup. Ct. at page 761, 47 L. Ed. 1084, the Supreme Court said:

"In section 63b provision is made for unliquidated claims against the bankrupt, which may be liquidated upon application to the court in such manner as it shall direct, and may thereafter be proved and allowed against his estate. This paragraph 'b,' however, adds nothing to the class of debts which might be proved under paragraph 'a' of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court should direct."

Indeed, it is not too much to conclude that Congress meant to make the provision controlling, and so the following cases hold: In re Heim Milk Product Co. (D. C.) 183 Fed. 787, 25 Am. Bankr. Rep. 746 ; In re Silverman (D. C.) 101 Fed. 219, 223.

[3] No application had been made to the bankruptcy court to direct a liquidation of this claim. If there had been an application, the court (usually the referee) might have directed any admissible proceeding in any court having jurisdiction, or might have withheld direction if it appeared that the application was made more than a year after the adjudication. Upon the case as now presented much doubt is thrown upon the question whether the suits in the state court by the People's Bank against persons other than the bankrupt or his trustee upon promissory notes for exact sums and upon a written guaranty plainly expressed, were upon "unliquidated claims" within the meaning of section 63. In re E. O. Thompson & Sons (D. C.) 123 Fed. 174, 176.

Besides, speaking generally, if we may depart from strict construction, the idea runs through all applicable cases that any litigation, in which liquidation is sought or can be obtained, must have begun either before the bankruptcy proceeding commenced or within a year after the adjudication—all agreeing that if the litigation had thus begun the form or forum of it would not be very material, and all further agreeing that the form of making proof or the assertion of a claim in a bankruptcy proceeding might, in the meantime, be quite informal. To accomplish equitable results there have been relaxations held to be admissible in respect to liquidation. The relaxations, within certain limits, to which we have referred, and the manifest fact that the one year subsequent to the adjudication had long previously elapsed, suggested the necessity for some explanation by claimants of their delay, and in the proof of debt sworn to and filed November 12, 1917, this was attempted, when they said:

"The claimants state that until the present time they have been unable to properly prove up and present their said claim, owing to the fact that the amount thereof had not been fixed and determined; but now that the Nelson circuit court has construed said written guaranty and adjudged and determined the party's liability thereon and thereunder, said claim is provable, and becomes and is a just claim for allowance against the said estate of the bankrupt."

While mainly this statement covers mere legal conclusions, it does allege the fact to be that up to the date referred to the claimants had been unable to properly prove and present their claim. This, we think, on its face is a mistake for two reasons:

First. They or either of them could, within the year, have proved or asserted their claims, informally or otherwise, in this proceeding. Section 57i of the act reads as follows:

"Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor."

We may, we think, safely conclude that the writing hereinbefore copied should be construed as constituting an obligation to secure "the individual undertaking" of another person, to wit, the Distillers' Cooperage Company, and whether the obligation of those who signed the paper should be regarded as that of guarantors or as that of sureties is not very material in view of this statutory provision. The People's Bank could have proved, but did not prove, any of the debts. This being true, the record shows no legal obstacle in the way of any of the guarantors (except the bankrupt) making proofs of all the debts, at least provisionally, and in such form as to save all their rights.

Second. An examination of the record shows that the bankrupt's schedule of debts does not include the names of any of the guarantors of the notes of the Distillers' Cooperage Company to the People's Bank, though the name of the bank appears in the schedule as a creditor of the bankrupt for large sums. It will be remembered, however, that the claimants only guaranteed debts of the Distillers' Cooperage Company to the People's Bank, and that they did this jointly with the bankrupt; but they had paid no part of those debts at the time of the adjudication. Possibly a frank and full disclosure of all the liabilities, absolute and conditional, of the bankrupt, might have included his liability to the People's Bank on the notes described in the proof of debt; but there is no suggestion that the omission to include it in the schedule was either fraudulent or intentional. Presumably as reasonably prudent men the claimants knew, or could by inquiry have ascertained, all the facts as to all liabilities under the guaranty as fully as could their coguarantor, the bankrupt, for it must be recalled that one of the claimants, who, of course, is one of the guarantors, is L. B. Samuels, who, on behalf of the Distillers' Cooperage Company, and by himself as its treasurer, signed each of the notes on which the proof of debt is founded. He is one of the claimants who joined in that proof, and it is not reasonable to suppose that the perfect knowledge he had on the subject of the execution of the notes was not at all times open and available to the other guarantors. Besides, as will also be remembered, the contract with the People's Bank plainly showed that the guarantors were the owners of the Cooperage Company. So that it is manifest that all of the claimants knew all about the notes at all times, and that if they forgot them or overlooked their right to make proof at an earlier date it was a misfortune which could not now

increase their rights. In re Rhodes (D. C.) 105 Fed. 231; In re Baird & Co. (D. C.) 154 Fed. 215, 18 Am. Bankr. Rep. 228; In re Daly (D. C.) 205 Fed. 1002.

The claimants have tendered and have asked leave to file an amendment to the proof of their claim. Most of the averments of the proposed amendment refer to the merits or demerits of the judgment rendered in the litigation in the state court, over which we can exercise no control. The other part of the proposed amendment renews the statement that the claimants did not know of the existence of the notes given under the guaranty. What we have already said on that subject clearly indicates that we should overrule the application to amend the proof of debt.

Upon the whole case, we are constrained to the conclusion that the referee was right, and his order of January 8, 1918, will be approved and affirmed. A decree accordingly may be entered.