**Dexter D. HULSART, Appellant,**

v.

**Perry O. HOOPER, as Trustee of Stremming Veneer Company, Inc., Appellee.**

No. 17894.

United States Court of Appeals
Fifth Circuit.

Feb. 2, 1960.

Rehearing Denied March 23, 1960.

Fred S. Ball, Montgomery, Ala., De-Vane K. Jones, Aubrey Dominick, Tuscaloosa, Ala., for appellant.

Jack Crenshaw, Montgomery, Ala., for appellee.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment in a bankruptcy proceeding in which, adopting as his own the memorandum opinion, the findings of fact and the conclusions of law of the referee, denying appellant's petition to foreclose his mortgage for the full amount of his claims, the district judge made the referee's order the judgment of the court.

A contest below and here between a mortgage creditor, claiming under open end provisions of two mortgages, a first mortgage dated November 28, 1952 and a second mortgage dated March 30, 1957, respectively, and the trustee in bankruptcy, representing unsecured creditors, the appeal is on a record which, as shown

in the summary set out in the margin,[1] presents no material dispute of fact, and the difference between the parties arises out of the construction and effect of the language of the open end provisions of appellant's two mortgages.

1. When the bankruptcy proceedings were initiated by an involuntary petition on April 22, 1958, the bankrupt owed Hulsart $64,385.92, of which $49,385.92 was a running account balance on the purchase of cores, and $15,000 balance on a $25,000 first mortgage loan made to the bankrupt in 1952 by Hulsart and five others, who at that time operated a partnership under the name of Hulsart Veneer Company. These five others, in January 1958, by recorded instrument assigned their interest in this mortgage loan to Hulsart. The mortgage was what is sometimes called an open end mortgage in that it provided that in addition to the recited indebtedness, it secured also all and any additional and other amounts then or thereafter owing to the mortgages, including any future advances and all other debts and demands of any kind which the mortgagor then or thereafter owed to the mortgagees, including demands assigned to them or acquired by them before the full payment of all amounts secured by the mortgage.

In addition to the first mortgage, Hulsart had at the time of the bankruptcy, a $45,000 second mortgage on the plant and equipment. This second mortgage was made by the bankrupt on March 30, 1957, to Hulsart alone. It was also an open end mortgage and contained the same provisions as the first mortgage with reference to the security of other debts and demands of any kind owing before the payment in full of all amounts secured by the mortgages.

At the time the second mortgage was made the balance on the open account was $55,753.80. Hulsart was pressing for payment. With a first mortgage already on the bankrupt's plant and equipment, the bankrupt's financial condition was not such that it could raise funds on its own credit. Hulsart's credit was good and arrangements were made by him with a Tuscaloosa bank for a $45,000 loan to be made to the bankrupt with Hulsart's endorsement, the proceeds to be applied on the bankrupt's running account. Under this arrangement the bankrupt executed two $45,000 notes, one to Hulsart and one to the bank with Hulsart's endorsement. To secure the notes the bankrupt executed the $45,000 second mortgage to Hulsart but this mortgage was not assigned or turned over to the bank, but was kept by Hulsart and was still held by him with his $45,000 note at the time of the bankruptcy. The application of the $45,000 credit on the running account left remaining a substantial balance which after further purchases by the bankrupt had increased to $49,385.92 by the date of the bankruptcy proceedings on April 22, 1958.

The bankrupt made installment payments to the bank on its $45,000 note until it was paid in full and received the note marked to show full payment. The Trustee in Bankruptcy contends that the payment of the bank's $45,000 note discharged the mortgage despite the fact that at the time the mortgage was given and at the time of the bankruptcy there still remained a balance on the running account. Hulsart contends that under the provisions of the mortgage it secures also the running account.

In November 1957, some months after the $45,000 mortgage had been made in March of that year and at a time when the bankrupt owed Hulsart a substantial balance on the running account and still owed the bank on its note and also still owed the $25,000 first mortgage to Hulsart and his partners, the bankrupt in order to raise money, arranged to sell off some of the items of property included in the two mortgages. An auctioneer concern, Norman Levy & Company, was employed by Stremming to hold an auction sale. In order to pass a clear title to purchaser, Hulsart, on November 14, 1957, signed two letters stating that he would accept a specified amount in satisfaction of the two mortgages, namely, the $25,000 principal plus interest for the first mortgage and $22,000 and interest on the second mortgage. Enough property was sold to pay the $22,000 and interest on the second mortgage and $10,000 on the first mortgage. The second mortgage was not surrendered or cancelled of record, nor was there any request for it. Hulsart contends that there was no consideration for the letters because the payment of a part of an undisputed debt is not consideration for an agreement to accept the partial payment in full satisfaction.

Hulsart had started foreclosure of his two mortgages when bankruptcy intervened. He then filed his petition in the bankrupt court for permission to proceed with foreclosure.

The trustee opposed the petition and took the position that Hulsart was a secured creditor only to the extent of $15,000 on his first mortgage and that neither that mortgage or the second mortgage af-

Insisting that, in these circumstances, the referee's findings and conclusions are not binding on this court, and vigorously stating his case for reversal and rendition as set out in the margin,[2] appellant is here urging upon us that the findings and conclusions below, and the judgment based thereon, went contrary to the settled law of Alabama and the truth and right of the case, and they may not stand.

The trustee, on his part, thus stating his view of the case:

forded him any security for his running account.

Hulsart contended that under the law of Alabama which governs in such cases, the plain, clear and unambiguous open end provisions of his two mortgages give him the position of a secured creditor for the full amount of his claim.

A concise chronology of the facts is:

November 29, 1952, $25,000 first mortgage and note.

March 30, 1957, $45,000 second mortgage and two notes, one to Hulsart, one to bank with his endorsement.

November 14, 1957, letters to auctioneer about payment of mortgages.

December 9, 1957, Bank's $45,000 note paid.

January 27, 1958, $25,000 mortgage assigned to Hulsart alone.

April 22, 1958, Bankruptcy petition.

**2.** The sole question raised by the appeal is whether Hulsart is a secured creditor to the extent of $64,385.92 plus interest and attorney's fees.

This involves the following points:

(1) In a state where open end mortgages are approved, and a first mortgage made in favor of six mortgagees provides that it secures, in addition to the original indebtedness, all other debts owing before full payment of the mortgage, including all debts and demands acquired by the mortgagees and one of the mortgagees acquires the interest of the other mortgagees by assignment and later, before full payment of the mortgage the mortgagor becomes indebted to that mortgagee for goods purchased, that indebtedness is also secured by the mortgage.

(2) In such a state, where a mortgage is given to a mortgagee to secure part of a running account and it provides that it also secures all other debts owing before full payment of the mortgage, it secures the balance of the running account.

"The one issue in this case is whether the appellant, who sold raw materials to the bankrupt on open account, is entitled to have his account paid in full to the detriment of other creditors represented by the appellee, who likewise sold raw materials to the bankrupt on open account. The appellant bases his claim upon: (1) a 1952 mortgage to Hulsart Veneer Company, assigned to the appellant within four months of bankruptcy and while he was a di-

(3) In such a state, a debtor owes a creditor a running account for purchases being made. The creditor demands payment but the debtor cannot pay and is not able to borrow elsewhere to obtain funds with which to make a substantial payment. The creditor has credit with a bank. The debtor (Stremming) executes a note dated March 30, 1957, secured by a second mortgage bearing even date for $45,000 payable to creditor. A few days later, the debtor (Stremming) on, to-wit: April 8, 1957, executes another $45,000 note payable to creditor (Hulsart) and this note was endorsed by Hulsart and taken to City National Bank. (This was nothing but a "Convenience" note for banking purposes). By reason of creditor's (Hulsart) endorsement, the creditor (Hulsart) receives the amount of the note ($45,000) from the bank. And the creditor (Hulsart) credits the account of the debtor (Stremming) with that amount. The note and mortgage (March 30, 1957) was never at any time assigned to the bank. The amount so credited is not enough to balance the account and there is left a substantial balance. The debtor continues to buy from the creditor and to make payments on the account from time to time but at no time is the account ever in balance. The mortgage provides that it secures in addition to the recited amount all other debts then or thereafter owing by the debtor to the creditor and all other debts owing before payment in full of all amounts secured by the mortgage. In time, the debtor pays the bank directly and in installments its note. The payment to the bank of its note does not deprive the creditor of the security of the mortgage for the balance of the running account.

(4) In such a state where a mortgage contains a provision that it secures not only the recited indebtedness but all other debts and demands owing before payment in full of all amounts secured by the

rector of the bankrupt; and (2) a second mortgage made for the purpose of securing $45,000 from the City National Bank, which debt was immediately assigned to the City National Bank and paid in full to that bank. The referee found from the evidence that the appellant's open account was not secured by either of these two mortgages."

urges upon us that the well considered memorandum opinion of the referee and his findings of fact and conclusions of law fully answer every contention of the appellant, and the judgment should be affirmed for the reasons stated in the opinion.

■■ We do not think so. On the contrary, we think that the memorandum opinion, in characterizing as "dragnet" the mortgage clauses in question here and in stating, "Such clauses are not highly regarded and should be carefully scrutinized", approached the consideration of the case by begging the very question for determination, whether the mortgage clauses here were in reality "dragnet" clauses,[3] and, as a result, misconceived and misstated the generally prevailing law on the question here involved, particularly that of Alabama, which, as it is stated in the leading case of First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64, at pages 66 and 67, is controlling here. There the register, as did the referee here, found that the mortgage did not include "other indebtedness owing by the said Bain to the grantee before full payment of the mortgage". The Supreme Court of Alabama, reviewing these findings in the light of the controlling rules of law, thus set them forth:

"When a mortgage sets out and defines a specific indebtedness se-

cured thereby, provisions extending the security to other indebtedness in general terms were formerly viewed with disfavor. They may serve to take advantage of the confiding or the illiterate.

"[1] But it is now the settled law of Alabama, and throughout this country, that clear and express provisions extending the security to other existing indebtedness or to future indebtedness, between the same parties are given full effect. Indeed, it is held on high authority, that in many cases it would be a great hardship if this rule did not obtain as regards future indebtedness incurred or assumed by the mortgagor. For example, a bank customer, having occasion in his business operations to obtain frequent loans, may thus avoid the necessity of giving repeated mortgages.

"Such mortgages have become a recognized form of security. 19 R.C.L. p. 295, § 68; Ann.Cas.1913C, 552, 553.

\* \* \* \* \* \*

"[2–3] The mortgage need not specify any particular sum. Even as to third persons, this court has said: 'If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a bona fide purchaser.' Lovelace v. Webb, 62 Ala. 271, 281. [Cf. also the many cases cited.]

"[4] The words 'and any other indebtedness owing by the said W.

---

mortgage and there is no dispute as to the amount owing at the time and the mortgagee states that he will accept part of the debt in full payment, the payment of a part of the admittedly larger debt is not consideration for the agreement to accept the amount paid in full satisfaction.

3. Cf. First v. Byrne, 238 Iowa 712, 28 N.W.2d 509, at page 511, 172 A.L.R. 1072, where the court, saying: " 'Dragnet' clauses are not highly regarded in equity.", went on to determine that the clause in question was a true dragnet clause. ["A device to gather things indiscriminately in the mass." Webster's Dictionary]

N. Bain to the grantee before the full payment of this mortgage' are clear and unambiguous. This is a contractual stipulation. Its limitations are that such debts shall be 'owing by said W. N. Bain,' and he must owe them before 'full payment of this mortgage'. In other words, when he comes to satisfy and obtain a surrender of this security, he must pay any other indebtedness he then owes the bank. It is a prospective security in this regard.

"It will be noted the register found that under the evidence, the intention was to secure only the personal debt of $7500 then owed by W. N. Bain. He expressly finds there was no undertaking to secure future advances.

\*　　\*　　\*　　\*　　\*　　\*

"[14] We are fully mindful of the rule that on controverted issues of fact, the finding of the register who sees and hears the witnesses is accorded the same weight as the verdict of a jury.

"[15] The register's views of the law, however, when he is called upon to decide same on a reference has no such effect.

"In this case, we are impressed there was no substantial legal evidence supporting his finding.

"[16] His finding must be regarded as a mistake of law, a misconception of the legal effect of the express stipulations of the mortgage.

"The decree confirming the report of the register is reversed, the report set aside, and the cause remanded for further proceedings in accord with this opinion."

"Reversed, rendered and remanded."

▆ The opinion of the referee does indeed state: "In the absence of statutes to the contrary (and there are none in Alabama) the law is generally to the effect 'that clear and express provisions extending the security to other existing indebtedness or to future indebtedness between the same parties are given full effect'. First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64." Instead, however of giving this holding effect here, he sought, as the register did in that case, and equally without warrant, we think, in the evidence, by arguing without facts to support his argument, that the open end provisions of the mortgages in question here are not clear but are ambiguous, and are subject, therefore, to being nullified by a construction based upon supposed, but nonexistent, extraneous evidence of an intent contrary to that the mortgages plainly express. It is precisely here, we think, in the absence of any ambiguity in the provisions of the mortgages and, therefore, of admissible and pertinent evidence swearing their clear provisions away, that the referee's findings and conclusions that the clear and express provisions of each of the mortgages, that it secured the other indebtedness claimed here, are completely vulnerable and the judgment denying the relief sought by appellant is without support in fact and in law.

In 59 C.J.S. Mortgages §§ 176, 177 and 178, there appears an excellent treatment of the subject under discussion here, with the citation of many cases fully supporting the holding in the Bain case which is there cited, and a reading of the text and the cases cited will, we think, serve to make crystal clear the correctness of the views we have expressed. Cf. what is said at page 298 in Ashdown Hardware Co. v. Hughes, 267 S.W.2d 294, 223 Ark. 541.

Because of the fact that, since the first mortgage fully secured his debt, whether the second mortgage did also is immaterial, we have not dealt, we will not deal, with the question decided by referee and district judge adversely to the appellant and discussed in the briefs, whether the second mortgage was discharged, further than to say that we regard it as a troublesome and difficult question, not to be as easily solved as those for and against a particular solution seem to think.

The judgment is reversed and the cause is remanded with directions to allow appellant's claims secured by his first mortgage and to permit its foreclosure.

Reversed and remanded with directions.