Charles C. SHAW, as Trustee in Bankruptcy of Bemporad Carpet Mills, Inc., Bankrupt, Appellant,

v.

WALTER E. HELLER & COMPANY, Appellee.

No. 24105.

United States Court of Appeals Fifth Circuit.

Sept. 14, 1967.

Rehearing En Banc Denied Nov. 27, 1967.

tion by proving itself to be a creditor who was at all times during the period in question fully secured. In addition, the district court found that Heller as a creditor-debtor of the bankrupt was entitled to set off the accounts as mutual debts and credits as provided by Section 68 of the Bankruptcy Act.

There is no question but that the evidence was substantial to support the finding that the trustee proved the elements necessary to establish the transfers as voidable under Section 60a. We are equally convinced that Heller's defenses thereto were not proved or sustained by the record and applicable law and hence should have been rejected by the district court.

Clinton J. Morgan, Rome, Ga., for appellant.

Chas. L. Gowen, William H. Izlar, Jr., Atlanta, Ga., Michael J. Freed, Chicago, Ill., King & Spalding, Atlanta, Ga., A. Bruce Schimberg, Leibman, Williams, Bennett, Baird & Minow, Greenberger, Krauss & Jacobs, Chicago, Ill., of counsel, for appellee.

Before RIVES and DYER, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

Appellant, trustee in bankruptcy of Bemporad Carpet Mills, Inc., was denied relief by the district court in his plenary action to recover certain transfers made by the bankrupt to the appellee, Walter E. Heller & Company, which transfers were alleged to be either voidable preferences under Section 60a of the Bankruptcy Act or fraudulent under the provisions of Section 67d(2). The district court determined that all of the requisite elements of a voidable preference were conceded by the appellee or proved by the appellant. However, recovery was then denied on the basis that Heller established an affirmative defense to the trustee's ac-

## I

Prior to the filing of its voluntary petition in bankruptcy on March 18, 1964, the bankrupt Bemporad Carpet Mills, Inc., was a carpet manufacturer at Fort Oglethorpe, Georgia. For some years it had suffered from financial difficulties, including a Chapter X reorganization proceeding which was dismissed in November, 1962. At that time, in order to secure funds for its continued operation, Bemporad gave Heller, a national concern whose business is factoring and otherwise financing businesses, a security deed on its real estate and equipment to secure the repayment of $430,000, $330,000 of which was advanced by Heller immediately, with the balance reserved to pay suppliers of Bemporad's raw materials.

On the same date, Bemporad and Heller entered into a factoring agreement whereby Bemporad would sell [1] "acceptable" accounts receivable to Heller. Heller would then credit the Bemporad account for the value of the accounts receivable and from time to time in its discretion would make payments to Bemporad out of this account. Heller also had factoring arrangements with four of Bemporad's suppliers of raw materials. Before any

---

[1]. Although the word "sell" is used here and by the parties, the ultimate results of the transactions in issue were not sales or purchases. Commercial Credit Corporation v. Sorgel, 274 F.2d 449, 466 (5th Cir. 1960).

of these suppliers would ship to Bemporad, a guarantee of payment was obtained from Heller by the supplier, and either at that time or a later date Heller would purchase the invoices evidencing the shipment. In addition to the guaranties and purchases made by Heller for these four suppliers, Heller guaranteed payment for raw materials sold Bemporad by the E. I. DuPont & Company, which company was not a client of Heller's.

During the four months' period immediately preceding the date of the filing of the bankruptcy petition, which period extends from November 19, 1963, to March 18, 1964, Bemporad transferred to Heller over $700,000 in accounts receivable. This created an account in favor of Bemporad which, according to the accounting procedures of Heller, showed a balance due Bemporad throughout the critical period. The amount in issue, $287,524.91, is the credited value of the accounts receivable which the trustee urges were transferred under such circumstances as would give rise to a voidable preference and is the sum the trustee asserts Heller paid itself to the detriment of other general creditors, the ultimate effect of which was to deplete the bankrupt's estate.

During the bankruptcy proceeding, Heller sold the security described in its security deeds for $479,820.57. After applying a portion of this to debts due it from Bemporad and deducting various charges, which are not questioned here, there remained $12,714.31, which Heller now tenders to the trustee as being all that it owes the estate. The trustee objects and reasons that the $12,714.31 has been created by Heller's having previously applied the aforesaid accounts receivable in the amount of $287,524.91 to the payment of antecedent debts owed by Bemporad to Heller.

■■ One of the recognized methods of valuation of security in bankruptcy is the conversion of the security into money by sale according to the terms of the contract and/or as may be approved by the court. Sec. 57h of the Bankruptcy Act. In this case the value of Heller's collateral was determined when it was sold for $479,820.57. To this extent, and no more, Heller was secured. The district court's determination that Heller was at all times a fully secured creditor is in error. Heller was made whole only by setting off the $287,524.91 accounts receivable, the validity of the transfer of which is the very question to be decided by the Court. While Heller may have felt secure, the secured status of a creditor in bankruptcy is more than a state of mind or a method of accounting.

■■ As stated in the opinion of the district court, the transfer of accounts receivable is not in itself preferential or fraudulent if the filing statutes are complied with and the accounts are transferred for a present consideration, but here the record unquestionably reflects that these transfers were stipulated by the parties to be made in payment of antecedent debts.

■■ It is by reason of the future advance clauses in the security agreements that Heller is secured to the extent of $479,000, Hulsart v. Hooper, 274 F.2d 403 (5th Cir. 1960), since it appears that the specific amounts due under the notes and mortgages were less. The trustee does not take issue with Heller's right to the full $479,000 received upon sale of the security, and it is not necessary for this Court to determine whether the supplier accounts and invoices guaranteed and purchased by Heller may be tacked on as future advances allowable under Georgia Code Section 67–1316. Thus, up to the amount of $479,000, the district court was correct in its conclusion as to the effect of "cross collateral future advance provisions contained in each of the security agreements." But the district court's general conclusion that the transfer of the accounts receivable, where all the requisite elements of a voidable preference were present, was the "giving of security by Bemporad to Heller prior to or concurrently with guaranties or commitments by Heller is not a preference under section 60 of the Bankruptcy Act" is not in accord with the

facts in this case and must necessarily be in reference to transactions between the parties which are not in issue here.

 If the transfer of these accounts could be called the giving of additional security—and we think it was not [2]—there is no support in the record for any theory that they were given "prior to or concurrently with." In this connection, it is appropriate to emphasize that all of the transactions here involve the satisfaction of antecedent debts. The giving of new or additional security under such circumstances, where the other elements of a voidable preference are present, would not relieve such transactions from being voidable by a trustee in bankruptcy. In re Pusey, Maynes, Breish Co., 122 F.2d 606 (3d Cir. 1941); Small v. Williams, 313 F.2d 39 (4th Cir. 1963). See 3 Collier, Bankruptcy § 60.21 (1966).

## II

Appellee's contention that it was entitled to set off the accounts under Section 68 of the Bankruptcy Act, while not determinative in the district court's ruling in view of the finding that Heller was at all times a fully secured creditor, must be dealt with here since such right of set-off, if established, would preclude recovery by the trustee. The record reflects that Heller set off against the Bemporad account, created by the transfer of the accounts receivable, payments made by Heller to the suppliers on invoices guaranteed and purchased. That this accounting procedure involved mutual debts and credits and effected a set-off in a general sense is apparent. It would appear from the surface to be the type of transaction which the statute contemplates. As pointed out by the district court in its opinion, Section 68 of the Bankruptcy Act does give a creditor who holds a set-off position an advantage. But by application of Section 68b(1), this advantage is available only to a creditor who has a claim that can meet the requirements of 57g of the Bankruptcy Act. This section provides that the claims of creditors who have received preferences shall not be allowed:

"The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."

 It follows that a creditor may not defend against the receipt of otherwise voidable preferences by asserting the right of set-off under Section 68, but, to the contrary, must prove himself to be free of such. Walker v. Wilkinson, 296 F. 850 (5th Cir. 1924); Bennett v. Rodman & English, Inc., 2 F.Supp. 355 (E.D.N.Y.1932), aff'd per curiam 62 F.2d 1064 (2d Cir. 1932). See 4 Collier, Bankruptcy §§ 68.08, 68.09 (1966). The advantage referred to by the courts and text writers,[3] and which is urged upon the Court by appellee, comes into play where a debtor-creditor of a bankrupt's estate may by setting off mutual debts or credits in effect pay himself, which payment if made by the bankrupt where all of the other requisite elements were present would constitute a voidable preference. Unfortunately for appellee, the transactions here involve more than matters of book entries. The payments were made by the bankrupt in the form of the transfer of accounts receivable, which were in turn applied against antecedent debts, at a time when appellee knew or had reason to believe that the bankrupt Bemporad was insolvent, the effect of which was to enable Heller to obtain a greater percentage of its debt than other creditors of the same class and which

---

2. Under Georgia Code Section 67–103, which was in effect at the time of the execution of these security agreements, property which may be embraced in such must be in existence or be one of those items described in the statutes. Accounts receivable are not among the items includable.

3. For an example of such statements, see 3 Remington, Bankruptcy § 1434.5 and authorities therein cited.

depleted the estate to the detriment of other general creditors.

That Heller in the position of a guarantor was a creditor who could be charged with the receipt of voidable preference has been pointed out by this Court's recent opinion in Cooper Petroleum, et al. v. Hart, et al., 379 F.2d 777 (5th Cir., June 29, 1967). In the *Cooper* case, as here, there were continuing transactions between the parties during the four months' period preceding bankruptcy, the results of which were the flow of goods to the bankrupt and payments made back from him on same. Our reasons for refusing to apply the so-called "net result" rule in the *Cooper* case are equally as applicable and compelling here.

The purpose of Section 60a is to create an insulated four months' period during which all creditors of the same class must be dealt with equally. While it may be conceded that there is a necessity for the existence of businesses who factor accounts and advance money to enterprises in financial difficulty— and perhaps in some instances they save such businesses from failure—these services do not entitle factors or others to exemption from the application of the provisions of the Bankruptcy Act. It might be argued that the converse should be true since such concerns are usually on the "inside" of the operation and thus have full knowledge of the situation out of which arise the circumstances they later seek to avoid.

Any appeal for the application of equitable principles can best be answered by Mr. Justice Harlan's statement in Bank of Marin v. England, 385 U.S. 99, 106, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (dissenting opinion):

"The Court's principal contention seems to be that equitable considerations oblige it to release the bank from liability. Its premise plainly is that equity is here a solvent to which we may appropriately resort; I am unable to accept that premise. This is not a case in which the statute is imprecise. Nor is it a case in which the legislature's intentions have been misshapen by the statute's words; even a cursory examination of the history of § 70 will evidence that its terms faithfully reflect Congress' purposes."

The judgment of the district court is reversed and the case is remanded for the entry of a judgment for the trustee.

RIVES, Circuit Judge (specially concurring):

I agree with the district court that the accounts receivable assigned by Bemporad to Heller pursuant to their factoring agreement [1] furnished Heller additional security against liability for Bemporad's supplies purchased or guaranteed by Heller. Even so, however, I think that Heller is bound by the value of its other security established by the foreclosure sale some six weeks after the date of bankruptcy as opposed to the previous theoretical or opinion values.[2] With value of the security so fixed, it cannot be said that Heller was a fully secured creditor during the critical four months prior to bankruptcy.

Aside from the question of security, I am impressed by the district court's view that " * * * there is considerable basis for holding that the payments were not preferential or, in the alternative, entitled to set off. It can be argued that there was a present consideration in that almost concurrently with the furnishing of assets (i. e. raw materials) to the bankrupt, payment was made to the supplier with the bankrupt's own funds. Mere delays in payment do not normally render the transfer of funds a payment

1. Part of this agreement provides: "Any amounts owing by you to us for merchandise purchased from any concern factored or financed by us, or for commissions, interest, etc., may, at our option, at any time be considered as advances against your sales accounts and chargeable to you."

2. Palmer Clay Products Co. v. Brown, 1935, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655; Canright v. General Finance Corp., 7 Cir. 1941, 123 F.2d 98.

on an antecedent debt. The purchases of raw materials by the bankrupt were in essence cash transactions, with a delay occasioned only by furnishing the payment through Heller. 8A C.J.S. [Bankruptcy] § 220(1) at page 100. Engstrom v. Wiley, 191 F.2d 684 (9th Cir. 1951). The court has a duty to consider whether the parties' intention was to make a cash sale or an extension of credit. Unquestionably during the four-months period the suppliers would not extend credit to Bemporad, nor would they ship until Heller assumed the payment of the invoices. Thus, in equity, there is considerable basis to conclude that there was no antecedent debt; and, further, that no depletion of assets of the bankrupt occurred through the transfers of cash credits for raw materials received."

It seems to me, however, that this preference action is governed by Section 60 of the Bankruptcy Act and not by general principles of equity.[3] The record shows Heller's payments for supplies out of the Bemporad account during the four-month period were not cash payments but were for supplies previously furnished and for which Heller had either assumed primary liability or had guaranteed payment. Thus the payments were for antecedent debts and had all the elements of a voidable preference under Section 60. In my opinion, the evidence did not show either that Heller had a legal right of setoff or that it was a fully secured creditor. I therefore concur in the result.

PER CURIAM:

Walter E. Heller & Company seeks a rehearing upon the determination of this Court in this case of the issues adverse to the contentions Heller & Company advanced. In addition, and as authorized by the appropriate rule of this Court, Heller requests that it be granted a motion for rehearing en banc so that the questions presented can be disposed of by the Court sitting en banc.

Heller's contention, in its application for a rehearing, that this Court and the District Court were dealing with two distinct transfers is erroneous. We were deciding whether there was a transfer under § 60a of the Bankruptcy Act which resulted in a voidable preference. Heller's insistence that this Court based its ruling upon a stipulation that the delivery over or assignment of accounts to Heller was in satisfaction of an antecedent debt is likewise erroneous. Bemporad delivered over to Heller some $700,000 in accounts during the four-month period preceding bankruptcy. $287,000 of these accounts was stipulated by Heller to have been applied on antecedent debts. Although Heller prefers to call the fund from which the $287,000 came a "factoring reserve," it was made up of accounts receivable of Bemporad delivered over to Heller during the four-month period. This delivery over or transfer, or whatever it might be called, when coupled with the application of accounts to antecedent debts, resulted in a transfer under § 60a. Once Heller stipulated that these accounts received within four months were used to pay antecedent debts, the transfer was completed and would and did relate back to the delivery over of the accounts.

At all times in this case Heller relied on affirmative defenses. What it states in its motion to be misconception of the facts would not and did not keep Heller from proving these defenses if they were available.

Heller's argument, in its rehearing motion in support of its defense of setoff, is likewise without merit. This argument is to the effect that the Court found that the transfer of accounts receivable was a voidable preference and its setoff defense was thus cut off without proper consideration. The true situation is that this Court found that by paying antecedent debts with accounts previously assigned to it, Heller completed a transaction resulting in a voidable pref-

---

3. Schoenthan v. Irving Trust Co., 1932, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185; Corn Exchange National Bank & Trust Co. v. Klauder, 1943, 318 U.S. 434, 437, 63 S.Ct. 679, 87 L.Ed. 884.

erence and hence was precluded from claiming a right of setoff against the trustee. As appellant trustee stated in an argument, "set off what?" Heller had paid itself. All it had to claim as a set-off under § 68 is this payment which the Court finds to be a voidable preference and which it is, consequently, forbidden to claim by § 68b.

It is, accordingly, ordered that the petition for rehearing be and the same is hereby denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25a, subpar. (b), the petition for rehearing en banc is

Denied.