ROBERTSON, Judge.
This case involves the rights of an as-signee of a personal guaranty agreement.
A guaranty agreement was executed in favor of Central Bank and Trust Company (Central Bank) by E.J. McMeans, Cecil F. Hackney, and John R. Hackney (appellees) in April 1974, to guarantee payment of any indebtedness incurred by Birmingham Appliance and Radio Corporation (Birmingham Appliance) under a “floor plan” arrangement. Birmingham Appliance was a retail appliance business of which McMeans was the chief executive officer responsible for its management and operation, and Cecil F. Hackney and John R. Hackney were stockholders. The agreement contained language inducing future credit to Birmingham Appliance from Central Bank. Central Bank subsequently assigned the guaranty to ITT Diversified Credit Corporation (ITT), which continued to extend credit to Birmingham Appliance for store inventory.
In April 1981, Birmingham Appliance filed for bankruptcy. ITT, soon thereafter, inspected, repossessed, and sold the remaining inventory of Birmingham Appliance to reduce the debt owed. ITT then sought judicial relief from the appellees individually based on the guaranty agreement.
After motions for summary judgment were filed, and at the request of the trial court, the parties agreed the amount in controversy to be as follows:
“[I]f the court finds that the guaranty was effectively assigned, but that it applies only to the Central Bank debt assigned by Central Bank to ITT which remains unpaid, ... the amount owing by the [appellees] to ITT would be $5,540.25.-... [I]f the Court finds that the guaranty agreement was effectively assigned and that it covers debt created by Birmingham Appliance & Radio Corporation after the assignment, then the [appellees] would be liable to ITT for a total sum of $113,220.00.”
Based on briefs and arguments for summary judgment, the trial court found there was no genuine issue as to any material fact and entered judgment in the amount of $5,540.25 plus interest for ITT, and relying on Ex parte Chandler, 477 So.2d 360 (Ala.1985), found in favor of the individual guarantors “as to advances made by ITT to the principal debtor after the time of assignment without notice.” The trial court further found that “[t]he contractual language was not sufficiently clear or unambiguous *45 so as to bind these guarantors to advances made by ITT.”
On appeal, ITT raises only one issue: Did the trial court err in holding that the guarantors were not indebted to ITT for advances made by ITT to Birmingham Appliance after the date of the assignment?
ITT contends that it merely stepped into the shoes of Central Bank when it assumed the assignment and that its conduct towards Birmingham Appliance “was virtually identical to the conduct of Central Bank prior to the assignment.” ITT argues that by virtue of the assignment of the agreement by Central Bank to ITT, ITT is entitled to collect from the appellees all sums it advanced to Birmingham Appliance after the date of the assignment which remain unpaid.
The guaranty in question contained the following:
“In order to induce [Central Bank] to accept ... obligations ... the [appellees], and each of them if more than one, do hereby jointly and severally guarantee to [Central Bank] the full, faithful and prompt performance, payment and discharge by [Birmingham Appliance] of ... (iii) any and all other indebtedness of [Birmingham Appliance] to [Central Bank], whether such instruments, agreements, and indebtedness now exist or are hereafter made or incurred.
[[Image here]]
“2. Notice of the acceptance of this guaranty by you and all other notices to which the undersigned might otherwise be entitled are hereby waived. In particular, but not in limitation, it shall not be necessary for you, or the Dealer, or any other person, firm, or corporation to give notice to, or obtain the consent of, the undersigned with respect to the making, selling, assignment, or purchase of any such instrument or agreement or the creation, renewal, or extension of any such indebtedness now existing or hereafter created. You may, without notice to or the consent of the undersigned and without affecting the liability of the undersigned, compound, compromise, renew, extend, or adjust any claim against, or grant any indulgence whatsoever to, the Dealer or any other person, firm or corporation.
[[Image here]]
“6. The terms of this guaranty shall be binding upon the [appellees], their heirs, personal representatives and assigns, and shall inure to [Central Bank’s] benefit, and to the benefit of [Central Bank’s] successors and assigns.” (Emphasis added.)
Simply put, a valid guaranty agreement was executed in favor of Central Bank, its “successors and assigns,” by the appellees for the purpose of inducing Central Bank, its “successors and assigns,” to accept indebtedness of Birmingham Appliance as it existed and as later incurred. Central Bank made a valid assignment of this agreement to ITT, which continued to make advances to Birmingham Appliance. The advances made by ITT to Birmingham Appliance after assignment were identical to the type of advances contemplated by the parties at the time the original guaranty agreement was executed.
The trial court cited Chandler to resolve the issues. Our review reveals that Chandler is distinguishable from the facts of the instant case and is not controlling. In Chandler, the supreme court refused to condone the misuse of an assigned secured note containing a future advance clause by a previously unsecured or undersecured creditor.
It is well established that future advance clauses are valid. See First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64 (1939). The issue here is the effect of an assignment of a guaranty agreement containing a future advance clause.
We find that Chandler does not resolve the issues in this case, that any notice requirement was waived by appellees, and that the contractual language was sufficiently clear and unambiguous. We further find that ITT, as good faith assignee of the guaranty agreement, is entitled to enforce the guaranty against the guarantors pursuant to its specific terms. See *46 Hulsart v. Hooper, 274 F.2d 403 (5th Cir.1960).
Consequently, summary judgment was improper, and any factual differences or defenses are due to be resolved by a trial on the merits.
Therefore, the judgment of the trial court is reversed, and this action is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
INGRAM, P.J., and RUSSELL, J., concur.